FIRST NATIONAL BANK OF BRANDON *vs.* GEORGE BRIGGS'S ASSIGNEES.

May Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Officer of Corporation—When his Knowledge is Imputable to his Principal —Bank not Chargeable with Notice of Conditions Attaching to Paper of its Officers—Debts Provable in Insolvency.*

Knowledge acquired by the officers or agents of a corporation while acting not for the corporation but for themselves, is not imputable to their principal.

This rule applies to controversies growing out of discounts of bills and notes by banks for their own officers. In such cases the bank is not affected by notice of any conditions upon which the paper was given.

A director of the plaintiff signed as maker an accommodation note payable to his brother, the cashier of the plaintiff, who kept the note without using it for nearly a year, when, both director and cashier having become insolvent, the cashier, with the consent of the director, inventoried it as an asset of the bank and gave himself credit for it in his loan account, signing a memorandum upon the note that it was for him to pay. The bank had no notice of the insolvency of either, but the next month both were adjudged insolvent. *Held*, that the note was provable against the director's estate.

It is for the court of insolvency to adjust the interest upon claims so as to secure equality among creditors.

APPEAL from the court of insolvency. Upon the report of a referee at the September Term, 1897, Rutland County, *Ross*, C. J., presiding, a *pro-forma* judgment was rendered for the plaintiff, to which the defendant excepted.

*Stewart & Wilds* and *Ormsbee & Briggs* for the defendant.

"There is no evidence that the $5,000 note was ever discounted by the bank or any money or other consideration paid for it." Report. This being found, the following deductions are to be made: (a) The plaintiff paid no consideration. (b) The plaintiff acquired possession of the

note from its cashier, after he became insolvent, in direct violation of the understanding with the accommodation maker that it was to be used to procure money at the time it was made. (c) The cashier was not at liberty to keep the note and use it upon his becoming insolvent. It must result as a matter of law that the bank is affected with all the equities existing between the maker and payee.

*Joel C. Baker* and *E. S. Marsh* for the plaintiff, contended as the court hold, and cited on the question of interest, *Clemons* v. *Clemons*, 69 Vt. 548.

Ross, C. J. (1) The first contention made on the referee's report relates to the liability of the insolvent's estate on claims one and two. One is a note for $7,000 and two a note for $2,200, both payable to the plaintiff and signed jointly by the insolvent and his brother, Frank E. Briggs. The plaintiff discounted both notes and neither have ever been paid. At the time these notes were discounted Frank E. Briggs was the cashier and George a director of the plaintiff bank. There is nothing on the face of the notes to indicate the relation of the signers to each other. Both signers appear upon the notes to be joint makers as principals. In fact, the insolvent was surety for the other signer. This relation was not in fact known to any of the other officers of the plaintiff. The knowledge of the makers of these notes, although one was the cashier and the other a director of the plaintiff bank, in law was not the knowledge of the plaintiff. Knowledge acquired by the officers as agents of a corporation, while not acting for the corporation, but *while acting for themselves*, is not imputable to the corporation. The general rule which imputes the knowledge of the agent to his principal, and charges the latter with it, is based upon the principle that it is the duty of the agent to act for his principal upon such notice, or to communicate the information obtained by him to his principal so as to enable the latter to act upon it. It does not apply when the agent

acts for himself, in his own interest, and adversely to that of the principal; because, in such case, he will very likely act for himself rather than for his principal, and because he will not be likely to communicate to the principal a fact which he is interested to conceal or under no duty to communicate.

This applies to all cases where he is acting for himself with the corporation. Hence, if a corporate officer, or agent, acts avowedly for himself in a transaction with the corporation, he is regarded as a stranger to the corporation, dealing as if he had no official relations with it. These rules apply to controversies growing out of discount of bills and notes by banks for their own officers. In such cases the bank will not be affected by notice of any conditions upon which the note in question was given. 4 Thompson's Com. on Corporations §§ 5204 to 5208. *Bank* v. *Gifford,* 47 Iowa 575; *Bank* v. *Christopher,* 40 N. J. L. 435; *Lyndon Mill Co.* v. *Lyndon L. and B. Institution,* 63 Vt. 581. On these well established principles the plaintiff is not affected with imputable knowledge of the relation of the insolvent to the other signer of these notes. Unless knowledge of his relation to the other signer, on the facts found, is imputable to the plaintiff, it is not contended that the facts found by the referee in regard to the extension of the time of the payment of these notes, if found from competent testimony —in regard to which no decision is made—discharge the insolvent or his estate from liability to pay them. These notes therefore are proper charges upon the estate of the insolvent.

Claims three, four and five are not contested here.

(2) Claim six is a note for $5,000 executed by the insolvent Jan. 17, 1891, payable to the order of F. E. Briggs at the bank of the plaintiff one month after date. It is found that this was an acommodation note executed by the insolvent to his brother, the cashier of the plaintiff, for use at the plaintiff bank. It was made without consideration or security. The referee reports that it bears certain endorse-

ments and memoranda upon its back in the handwriting of Frank E. Briggs. It bears the number of another note executed before that time by F. E. Briggs to the plaintiff for $2,000. There was no evidence before the referee that this note was ever discounted by the plaintiff nor that the bank ever paid any money or other consideration for it. It was not entered upon the records nor books of the bank until Dec. 30, 1892, when an inventory was made of the notes belonging to the bank. It was entered upon this inventory. Feb. 1st following Frank E. Briggs ceased to be cashier, and George Briggs became cashier for three months. At the time of making this inventory Frank E. Briggs was short in his various accounts with the plaintiff to the amount of $20,000. A portion of the shortage was in his loan account. If this note is a part of his loan account there is still a shortage of nearly $1,000. When the inventory was made both Frank E. and George were in fact insolvent, and filed petitions to be adjudged insolvents in the January following. They were both present at the making of the inventory. It is found that Frank E. on that day, before the inventory was made, endorsed the note and placed it among the notes belonging to the plaintiff, to make up in part the shortage in his loan account. When the note was found among the notes of the plaintiff in making this inventory, the insolvent expressed surprise at finding this note among the notes of the bank and asked what it meant. Frank thereupon said that it belonged to him to pay. Thereupon the insolvent wrote across the back of the note the words, "This belongs to me to pay," and Frank E. Briggs signed it by placing his initials, "F. E. B." thereunder. Thereafter this note remained among the notes of the bank and was passed over by Frank E. as such to the insolvent when he became cashier Feb. 1, 1893, and by the insolvent passed over to his successor when he ceased to be cashier May 1, 1893. The referee finds that this note, with others, was signed by the insolvent with the understanding

on his part that it was to be used by Frank E. at the plaintiff bank and to represent money to be then borrowed by him. There is no finding by the referee that either the insolvent or his brother, Frank E., was insolvent when the latter executed and delivered to the former this note Jan. 17, 1891. From that time until Dec. 30, 1892, Frank E. held it in his hands with the right to use it in his dealings with the plaintiff, and on the latter date he did use it as an asset which he held, to reduce the shortage in his loan account with the plaintiff. This was done with the knowledge of the insolvent and without objection from him. It then became an asset of the plaintiff with the knowledge of the insolvent. It is not found that the plaintiff then believed or had reason to believe that either the maker or endorser of this note was insolvent. The note was not a conveyance of property by either. Hence the assignees of George Briggs cannot take advantage of the fact of insolvency to defeat the appropriation of the note then made by Frank E. with the acquiescence of the insolvent, to the use and benefit of the plaintiff. On these views this note is a proper charge against the estate of the insolvent. The referee has submitted a question as to the time to which interest should be computed on some of these claims. We have not considered that question inasmuch as we understand that the court of insolvency will adjust the computation of interest on all claims proved against the estate so that all may share ratably in the estate.

*Judgment affirmed and ordered to be certified to the court of insolvency.*