No. 12,947.

F. L. RICHARDSON, RECEIVER AMERICAN NATIONAL BANK, vs. FRANK
WATSON.

SYLLABUS.

In case the president and cashier of a bank unite and co-operate together in ab-
stracting and misapplying its funds, and in order to accomplish their pur-
pose and secrete their transactions from the board of directors, the note of
a friend with fictitious collaterals attached, is obtained and placed in the
portfolio of the bank, the bank is not bound thereby, as said officers acted
for themselves, personally, and not for the bank; but the maker of such a
note is bound to the bank, notwithstanding it was without consideration as
to him.

ON APPEAL from the Civil District Court for the Parish of
Orleans. *Monroe, J.*

*Frank N. Butler* for the Plaintiff and Appellee.

*R. L. Tullis* for the Defendant and Appellant.

Argued and submitted March 7, 1899.
Opinion handed down April 3, 1899.
Rehearing refused June 27, 1899.

The opinion of the court was delivered by

WATKINS, J.   This is a suit upon a promissory note by the receiver of the American National Bank.

It is for the sum of $17,500, and bears date May 25, 1895. It is made payable to the order of the bank on December 24, 1895.

At the foot of the note, and above the signature of the maker, are listed certain securities as having been pledged for its payment, and the prayer of the petition is for the recognition and enforcement of this pledge; but another person having filed an intervention, making claim thereto, the plaintiff filed an amended petition in which he abandoned all claim thereto as security for said note.

Upon the reverse of said note are certain credits endorsed, indicating certain payments to have been made in discharge of interest, and partly extinguishing the capital of same, and apparently reducing it to the sum of $12,859—mention of which is made in the petition as having "apparently reduced" the capital of the note to that sum, and for which amount judgment is claimed—but the defendant in his answer, amongst other things, denies any knowledge, possession, or ownership of said collaterals.

The answer of the defendant is as follows, viz.:

"That he signed said note in blank at the request of Walter W. " Girault, who was cashier, and one of the directors of the American " National Bank of New Orleans at the time of said signing; that no " consideration whatever was received by defendant for said note; " that it was purely an accommodation note, and known to be such by " said bank, its officers, agents and employees."

Defendant further "avers, that said bank gave no consideration for " said note, has never negotiated it, and is not entitled to recover " thereon, etc."

He "further avers that, as to the pledge of the stock of the Stafford " Mineral Springs and Hotel Company, Limited, made to secure the " payment of said note, he was entirely ignorant, until after the fail- " ure of the said bank, as he, also, was of the credits endorsed

" upon said note, and of all matters connected with it, *after* his signa-
" ture had been attached to it.

"That said note was delivered by him to said Girault, immediately
" after signing it; and that all dealings and transactions, of which it
" was the basis, were conducted by the officers, agents and employees
" of said bank, without (his) knowledge, consent, or approval, and
" he can not be bound thereby."

On the trial there was judgment in favor of the plaintiff for the
amount demanded; and after an unsuccessful effort to obtain a new
trial, the defendant has prosecuted a devolutive appeal therefrom.

The following statement is quoted from the brief of plaintiff's
counsel, viz.:

"*Henry Gardes, president* of the American National Bank, used
" about thirty thousand ($30,000) dollars of said bank's money in a
" disastrous *speculation,* in his own name and for his own account.

"*W. W. Girault, cashier* of said bank, aided and abetted said
" Gardes in this misappropriation of the funds of said bank, and, in
" order to enable him to withdraw said funds from the bank, *without*
"*the knowledge of its board of directors, he (Girault)* obtained from
" defendant, Watson, and from one Higginbotham, sundry notes,
" signed in blank, which Girault filled to the amount of about thirty-
" five thousand ($35,000) dollars. These notes were entered by the
" note clerk, under Girault's instructions, in the discount offering
" books of the bank, as so much paper acquired with the funds of the
" bank, apparently in the due course of business; and they were there-
" after carried in the portfolio of said bank as the property and assets
" of said bank.

"Instead of using the money, thus apparently drawn from the funds
" of the bank, to pay Watson and Higginbotham, for their aforesaid
" notes, Gardes and Girault appropriated the same in 'margining up'
" on the aforesaid speculation in Louisiana State Bonds.

"In order to give further appearance of regularity to the directors
" of said bank, said Gardes and Girault attached to said notes certifi-
" cates of stock in the Stafford Mineral Springs and Hotel Company,
" Limited, which had been pledged by Henry Mordecai as security for
" his indebtedness to said bank.

"The directors had no knowledge that the Watson notes were ac-
" commodation paper. On the contrary, they were led to believe, from
" the bank's books, and from the representations of Gardes and

" Girault, that they had been acquired, in due course of business, for " full value, with the money of said bank."

Thereupon, counsel submits the following as his contentions, viz.:

### I.

"We contend:

"That the bank having thus parted with its money, and having thus " acquired the note sued on, without any knowledge on the part of its " board of directors that it was accommodation paper, had the right " to enforce payment of said note, notwithstanding the fact that the "maker did not receive any consideration therefor.

### II.

"That when the president and cashier of a bank unlawfully com- " bine and confederate to appropriate its money in a *speculation for* " *their own account,* they are acting for *themselves,* and *not for the* "*bank;* they are *not* the agents of the bank in such a transaction, and " the bank has a right to recover on paper placed in its portfolio to " cover up said unlawful appropriation of the funds of said bank.

### III.

"That the *knowledge* of the *president* and *cashier* that the notes " they have used in thus unlawfully abstracting the bank's money, " were *accommodation* notes, *can not be held to be the knowledge* of " the bank, if the board of directors were not advised that said notes " were accommodation notes.

### IV.

"Such an independent fraud, on the part of the president and " cashier of a bank, is beyond the scope of their employment, and the " law will *not* presume that they did inform the bank in the premises."

The statement of the defendant's counsel is as follows, viz.:

"The note which forms the basis of the present suit was signed by " the defendant at the request of Walter W. Girault, cashier of the "American National Bank, of New Orleans, now represented by the " plaintiff, a receiver appointed by the Comptroller of the Currency.

"It was signed in blank by Watson, at the request of Girault, who sent for him for that purpose.

"Prior to the signing of the note—namely, on June 20, 1894,—the "defendant had signed other notes of the same character, except in " two respects; that the first batch of notes were not pledge notes, and " the name of the bank was printed in the blanks, payable to the " bank when signed, and the amounts were filled afterward, but the " payee's name was there in print.

"It should be constantly kept in mind, that in the whole series of " notes, the bank was made the immediate payee.

"It is abundantly shown that the notes were accommodation paper " pure and simple; defendant's testimony upon this point is clear and " emphatic, and is fully corroborated by Girault in his testimony in " chief. (Rec., pp. 27, 34.)

"The *modus operandi* by which the maker of a note receives or is " credited with the proceeds of its discount was carefully set forth by " an illustration of the methods of bank book-keeping, accompanied " by exhibits from the books of the bank, appearing in the form of " appendices to the record. These exhibits conclusively negative the " theory of Watson's having received any consideration for the notes, " and that proposition is not contended for; but the record just as " effectually destroys the plaintiff's contention, as expressed in the " second and fourth paragraphs of his syllabus, that the notes were " used in unlawfully abstracting the bank's money, or that the bank " acquired the notes by parting with its money.

"The record fails to show that the bank parted with anything of " value upon the faith of the notes. They were, so to speak, *ex post* "*facto* notes, the first series, aggregating $15,000, having been given " after the losses incurred in State bonds and other transactions, and " the note now sued on having been used principally to take up the " other notes. All the transactions concerning these notes are evi- " denced by entries upon the books of the bank, which, as a matter of " right, were open to inspection by its board of directors."

On the part of the receiver, the insistance is that the president of the bank used and misapplied a large amount of its funds in disas- trous speculation for his own account; that the cashier aided and abetted the president in this misappropriation of the funds of the bank.

That, in order to enable the president to withdraw said funds with-

Richardson vs. Watson.

out the knowledge of the board of directors, the cashier obtained from the defendant, and one Higginbotham, sundry notes signed in blank, which he, subsequently, filled out; and that in order to give those notes the appearance of perfect regularity to the directors, said president and cashier, upon their own motion, attached thereto certificates of the stock of the Stafford Mineral Springs and Hotel Company, Limited, which had been previously pledged to the bank by Henry Mordecai, as security, for his indebtedness to the bank.

That those notes were, by the cashier's instructions, entered in the discount offering book of the bank, as so much paper which had been acquired with the funds of the bank, and, apparently, in the due course of business of the bank; and he, likewise, caused same to be carried in the portfolio of the bank as property and assets of the bank.

On this state of affairs the plaintiff's counsel contends that the board of directors had no knowledge that the defendant's note was accommodation paper, but, on the contrary, believed, and had a perfect right to believe, that it had been acquired by the bank in the due and legitimate course of business.

Hence, in point of fact, they assumed that it was held by the bank for a valid and adequate consideration.

That, admitting for the argument, that the note was executed and delivered to the cashier of the bank, without any consideration on the part of the defendant as maker, it did not evidence a transaction with the bank, but was given for the personal accommodation of the cashier and president, by means of which they, under the circumstances related, abstracted funds from the bank illegally, and for purposes of speculation, in diametrical opposition to the interest of the bank, and without the knowledge of its board of directors.

The defendant must have known of the questionable character of the transaction in question, as well as of others of similar character, for the reason that he states that the note sued on was signed by him in blank, at the request of Girault, the cashier, who, afterwards, filled up the blanks. That Girault sent for him for that purpose. That prior to the signing of this note—namely, on June 20, 1894,— he "had signed other notes of the same character."

His testimony, and the course of his dealings with the cashier of the bank, shows a perfect familiarity, on the part of the defendant, with the use to which his notes had been applied.

It does not require proof to demonstrate the irregularity of a transaction by which a person goes to a bank at the request of its cashier, and signs, in blank, a note for $17,500 without any explanation, and without receiving one dollar of consideration; and it seems to our minds, equally clear, that the maker of such a piece of paper becomes liable to the bank for the amount of funds that the cashier and president thereof were enabled to abstract therefrom, without the knowledge of its board of directors.

In a certain sense, the bank is a third person *quoad hoc,* who has parted with value upon the faith of the note and collaterals thereto attached; the cashier and president acting for themselves, in their own interest, and not as the agents and officers of the bank.

True it is that the bank, through its board of directors, did adopt the acts of the cashier, but the board acted upon the apparent regularity of the transaction, and without knowledge of the deceit that the president and cashier of the bank had practiced upon them.

In Seixas vs. Citizens' Bank, 38th Annual (at page 435)—quite a similar case to the instant one—the court said:

"That, as a general rule, the knowledge of an agent is the knowl-
" edge of the principal. And even where an agent deals in a double
" capacity, for his principal and himself, at the same time. and where
" his acts are, evidently designed and intended to benefit or favor
" the principal to his own prejudice, or that of his creditors, even in
" such case his knowledge of his condition, or other material fact, will
" be regarded as the knowledge of the principal.

"*But where such agent seeks his own personal interest or advantage*
" *in the affair, without benefit to his principal, then his knowledge*
" *can not be held to be the knowledge of the principal.*" (Our italics.)

The principal question in that case was whether the bank was held bound by the acts and knowledge of its president; and the conclusion of the court was, that it was not.

And this conclusion was reached after great deliberation, and notwithstanding that the court found the following facts, viz.:

"But still it is beyond question that Mr. Carriere did deliver to the
" *cashier,* as stated, certain designated securities, with the positive
" instruction to retain them for the bank on account of, or as security
" for the overdraft."

In that case no wrong-doing or fraud was imputed to either the president or cashier of the bank, and the transaction was, to all ap-

pearances, in the usual course of the business of the bank; yet the court held the bank was not bound by the *knowledge* of its president, because *quoad hoc, he was acting in his own interest.*

For a much stronger reason should we hold, upon proof of the president's acts of abstraction and misapplication of the funds of the bank, and the cashier's guilty cimplicity in the transaction, that their dealings with the defendant did not bind the bank and thus absolve the latter from all liability on his note.

The knowledge of the president and cashier was not knowledge of the bank.

The bank lost its funds; and the note of the defendant furnished a means for its concealment from the directors, and enabled the president and cashier to accomplish their design.

In our opinion, the defendant is liable to the bank for the amount demanded of him; and our learned brother of the lower court thus held correctly.

Judgment affirmed.

MONROE, J., having decided this case in the lower court, takes no part in the decision on the appeal.