126    327
s85NW  879
f131  ¹183
126    327
f127  ¹632
ⁿ126   327
d150    85

STATE SAVINGS BANK OF IONIA v. MONTGOMERY.[1]

1. AGENCY—PRESUMPTIVE NOTICE TO PRINCIPAL—ADVERSE INTEREST OF AGENT—BANK CASHIER—DISCOUNTS.

Knowledge of a bank cashier's fraud in falsely representing to a maker and indorser of certain notes for his accommodation, discounted by him at the bank, that such notes were renewals of other notes, when such other notes had in fact been paid, cannot be imputed to the bank on the theory that the cashier acted as agent for the bank in accepting the notes; such principle of agency being inapplicable where the cashier himself is the party in interest.

2. SAME—MISREPRESENTATIONS—INJURY—LOSS OF SECURITY.

Defendant signed two accommodation notes for the benefit of a bank cashier, the notes to be discounted by the bank. After maturity he was told by the cashier that one of the notes was paid, whereupon he executed a note intended as a renewal of the unpaid note. Defendant testified that he had intended demanding security of the cashier, but did not do so because of his representation that the one note was paid; but it appeared that the cashier was then insolvent, and could not have given security if required. The last note given was subsequently returned to defendant. Held, in an action on the first notes, that, conceding that the bank could be charged with such representation, defendant had failed to show that he was injured thereby.

[1] Rehearing denied June 24, 1901.

Error to Ionia; Davis, J. Submitted October 9, 1900. Decided April 25, 1901.

*Assumpsit* by the State Savings Bank of Ionia against Alexander T. Montgomery on certain promissory notes. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*John Nichol* and *R. A. Hawley*, for appellant.

*George E. & M. A. Nichols*, for appellee.

MOORE, J. The plaintiff sued defendant to recover the amount due on two notes reading as follows:

"$1,500.00.        IONIA, MICH., Nov. 20th, 1897.
"Ninety days after date I promise to pay to the order of State Savings Bank of Ionia, Michigan, fifteen hundred and 00-100 dollars, at the State Savings Bank of Ionia, Michigan, with 7 per cent. interest after date. Value received.
                          "A. T. MONTGOMERY."

"$1,000.00.        IONIA, MICH., Nov. 20th, 1897.
"Ninety days after date I promise to pay to the order of State Savings Bank of Ionia, Michigan, one thousand and 00-100 dollars, at the State Savings Bank of Ionia, Michigan, with 7 per cent. interest after date. Value received.
                          "F. A. SESSIONS."

On the back of the last note is written, "A. T. Montgomery."

The circuit judge directed a verdict in favor of the plaintiff. The defendant has brought the case here by writ of error, asserting the case should have been submitted to the jury.

The predecessor of the plaintiff bank was the First National Bank of Ionia. Mr. Sessions was cashier of this bank from 1880 until the plaintiff bank became its successor, when he became the cashier of the plaintiff bank, and continued to be so until the last of March or the first of April, 1898, at which time it was learned that he was

in debt to the bank in a large amount, and was insolvent. The notes sued upon were given for the benefit of Mr. Sessions. Mr. Montgomery was an accommodation maker of one note, and an accommodation indorser of the other. When he attached his name to these notes, he knew they were to be discounted by the plaintiff bank. The bank had a discount committee, whose duty it was to pass upon original loans; and an examining committee, whose duty it was to look after the paper taken by the bank. The members of both of these committees testified they had no knowledge the first note was made for the accommodation of Mr. Sessions, but supposed it a note given by Mr. Montgomery in the due course of business. The discount committee knew the $1,000 note was indorsed by defendant as accommodation indorser, but the members of the committee all deny they knew there was any defect in the paper. The record shows defendant was a customer of the bank, and had been for some time. The discount committee had fixed his line of credit at from $3,500 to $4,000. Outside of the two notes in question, the defendant was a borrower in small amounts, for which he put collateral securities in the hands of the cashier. It is the claim of the bank officers that they supposed all his notes were secured by these collaterals, and that, when the examining committee questioned Mr. Sessions why the paper was not paid when it was due, they were assured by him that defendant was shipping horses at the time, and needed the money in his business, but the paper was secured by collaterals.

When the pleadings in the case were first put in, the defendant gave notice that he would show he received no consideration for the notes, but they were made for the benefit of Mr. Sessions; that on the 15th of March, 1898, he intended to require of Mr. Sessions, who was then solvent, indemnity against loss on the notes, but was informed by him that the $1,500 note had been paid, and, relying upon this statement, he renewed the $1,000 note; that he would not have done so if he had not believed the

statement to be true. It was the claim of defendant that the notes in controversy were given by him he supposing· they were renewals of notes which had been given before, the proceeds of which were used by Sessions. Upon the trial of the case, some of the books of the bank were introduced in evidence, and it is claimed by defendant they showed that, when the two notes in controversy were made,. the two notes of like amount, for which Mr. Sessions said the notes in controversy were given as renewals, had in fact been paid. The defendant obtained leave to amend his plea according to his understanding of the facts. It is. the claim of the bank that, though the books show Mr. Sessions gave a check for the amount of the notes, and the notes were charged to him upon the books of the bank, they were not in fact paid. It is also the claim that, whether this was so or not, as the cashier of the bank was acting in his own interest when the notes were discounted, his knowledge of his fraud in procuring the paper is not to be imputed to the bank, and that, as the bank discounted the paper without any knowledge by any other officer of the bank of any fraud in its procurement, the bank was entitled to recover the full amount of the notes. In directing a verdict for the plaintiff, the circuit judge expressed himself in part as follows:

"My view of the law is, the right to borrow funds from the bank on accommodation paper was not within the scope of Mr. Sessions' authority as the cashier, under the law. It appears from the evidence that Montgomery knew of the character of the paper that was given, and its purpose, and that it was to be used for the private benefit of Mr. Sessions, made payable to the bank, and in law was presumed to know that Mr. Sessions had no authority to loan the money in this way without authority derived expressly from the board of directors. It was a transaction that, to bind the bank, in my judgment required specific authority on the part of the directorate; and, when dealing with the cashier under the circumstances shown, he must, before he can secure the benefit of his defense interposed here, show that such authority was conferred; otherwise, it will be held not to be done with authority.

The cashier, in law, has no legal right to make notes running to the bank to pay private debts. A private maker or indorser lending his name for such a purpose is participating in the act of the cashier, and, unless the same was by authority and knowledge of the directorate, was ratified.[1] In this case no such sufficient knowledge exists, and no such authority to bind the bank; hence his defense is not a sufficient one.

"The directorate are in law bound to protect the funds of the bank, not for their own benefit, but for the benefit of those doing business with them in the regular way; and they are not in law bound to inquire into every transaction, to see that no fraud is committed upon parties who have assisted the cashier in diverting funds from their proper place to his own credit. It must be supposed that the party intended to be what he appeared on the paper, without it was brought to their knowledge, and, knowing it, they permitted the cashier to handle it as he saw fit. It is to be regretted in this case that Montgomery must lose through the fraud and wrong of the cashier, and innocently on his own part; but, if he lends his name in prejudice of the rights and interests of the bank, although ever so innocently, and as a result, without knowledge on the part of the directorate, a wrorg was done to him by the party for the benefit of whom he lent his name, he cannot now complain. It must be considered he lent his name to be used on the paper of the bank in a transaction in which the cashier had no right to act without authority, and where he was acting for himself; and this put him upon his inquiry if he desired to hold the bank for any wrong or fraud he claims had been perpetrated by the cashier, for, without express notice or authority from the directorate, Mr. Sessions could not release him. It is a rule of law that persons dealing with an agent, knowing that he acts by delegated authority, must, at their peril, see in each case that the facts upon which they rely come within the power delegated.

"Upon the other question, I think the evidence does not clearly show such a change of position on the part of Montgomery as to make the defense in this case available."

It is the claim of defendant, through his counsel, that there is reversible error:

"*First.* Because the notes in question were procured by

[1] Apparently an error in the record.—REPORTER.

means of the false representations of said Sessions, relied on by the defendant; and that Sessions, as plaintiff's cashier, having acted for the plaintiff in accepting said notes on the part of the bank, the plaintiff became and was chargeable with Sessions' knowledge of the fraud used by him in procuring such notes to be signed by defendant.

"*Second.* Because the plaintiff had notice or knowledge of the accommodation character of said notes, so far as defendant's connection therewith is concerned, and was chargeable with the knowledge possessed in that regard by its cashier, Mr. Sessions, who acted on the part of the bank in accepting such notes, and was bound by Mr. Sessions' statement made by him to the defendant on March 15, 1898, that the $1,500 note had been paid; particularly, if the jury had found that such statement was made, and that the defendant was misled by it to his injury."

It is very clear from the record that, unless the knowledge Mr. Sessions possessed is to be imputed to the bank, the latter had no knowledge of any want of consideration for the notes. If the knowledge of the cashier is to be imputed to the bank, then it had full knowledge that Mr. Montgomery received nothing for the notes. It is said by the defendant that the cashier is the executive officer of the bank; and is held out as its general agent in the negotiation and disposal of the notes, securities, and other funds of the bank; that it is his duty to receive payment of the notes held by the bank, and to give information as to whether a note has been paid or not; that what was done in relation to the notes in controversy by the cashier was done for the bank, and that his knowledge was the knowledge of the bank,—citing *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Kimball* v. *Cleveland*, 4 Mich. 606; *Oakland County Sav. Bank* v. *State Bank of Carson City*, 113 Mich. 284 (71 N. W. 453, 67 Am. St. Rep. 463); *Cochecho Nat. Bank* v. *Haskell*, 51 N. H. 116 (12 Am. Rep. 67). Counsel say, "It is well settled that if an officer of a bank acts alone in discounting a note, and in placing the proceeds to his own credit, the bank will be bound by his knowledge of the circum-

stances under which he obtained it from the maker;" citing *Shaw* v. *Clark*, 49 Mich. 384 (13 N. W. 786, 43 Am. Rep. 474); *Washington Bank* v. *Lewis*, 22 Pick. 24; and many other cases.

An examination of the authorities shows a want of harmony in relation to how far the knowledge of an officer of the bank is to be regarded as the knowledge of the bank. We think, however, the great weight of authority is as follows (*Innerarity* v. *Bank*, 139 Mass. 332 [1 N. E. 282, 52 Am. Rep. 710]):

"While the knowledge of an agent is ordinarily to be imputed to the principal, it would appear now to be well established that there is an exception to the construction or imputation of notice from the agent to the principal in case of such conduct by the agent as raises a clear presumption that he would not communicate the fact in controversy; as where the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme which the agent was engaged in perpetrating. *Kennedy* v. *Green*, 3 Mylne & K. 699; *Cave* v. *Cave*, 15 Ch. Div. 639; *In re European Bank*, 5 Ch. App. 358; *In re Marseilles Extension R. Co.*, 7 Ch. App. 161; *Atlantic Nat. Bank* v. *Harris*, 118 Mass. 147; *Loring* v. *Brodie*, 134 Mass. 453. * * * A bank or other corporation can act only through agents, and it is generally true that, if a director who has knowledge of the fraud or illegality of the transaction acts for the bank,— as in discounting a note,— his act is that of the bank, and it is affected by his knowledge. *National Security Bank* v. *Cushman*, 121 Mass. 490. But this principle can have no application where the director of the bank is the party himself contracting with it. In such case the position he assumes conflicts entirely with the idea that he represents the interests of the bank. To hold otherwise might sanction gross frauds by imputing to the bank a knowledge those properly representing it could not have possessed. Whether Burgess acted or not at the meeting of the directors in the matter of the loan, he could not lawfully have done so as the representative of the bank. His individual interest was distinctly antagonistic; and the question before the board related to its approval of a provisional transaction between himself and the president of the bank, in which he was the proposed borrower and the

bank was to be the lender. A director offering a note of which he is the owner for discount, or proposing for a loan of money on collateral security alleged to be his own property, stands as a stranger to it. 'That a joint-stock bank,' says, in substance, Sir W. M. James, 'should have imputed to it the knowledge which the director has of his own private affairs, is a most unreasonable proposition.' *In re Marseilles Extension R. Co.*, 7 Ch. App. 170.

"The relation which a director, who is himself acting for another in a negotiation with a bank, occupies towards it, was considered in *Washington Bank* v. *Lewis*, 22 Pick. 24, where it was argued that, although he was not the agent of the bank, yet his knowledge of facts showing the note to be invalid was that of the bank.

"'Whatever a director or other agent of a bank,' says the court, 'may do within the scope of his authority, would bind the bank, so as to make them responsible to the person dealt with. But, in the present case, Thompson was the party applying for the discount, and was not acting as director, nor could he with any propriety so act. He was the party with whom the bank contracted in discounting the note, and to whom the money was paid.'

"The proposition that a director of a corporation acting avowedly for himself, or on behalf of another with whom he is interested in any transaction, cannot be treated as the agent of the corporation therein, is well sustained by authority. *Stratton* v. *Allen*, 16 N. J. Eq. 229; *Barnes* v. *Gaslight Co.*, 27 N. J. Eq. 33; *First Nat. Bank* v. *Christopher*, 40 N. J. Law, 435 (29 Am. Rep. 262); *Winchester* v. *Railroad Co.*, 4 Md. 231; *Wickersham* v. *Zinc Co.*, 18 Kan. 481 (26 Am. Rep. 784); *Seneca County Bank* v. *Neass*, 5 Denio, 329, 337; *Third Nat. Bank* v. *Harrison*, 10 Fed. 243; *Stevenson* v. *Bay City*, 26 Mich. 44; *In re Marseilles Extension R. Co., supra; In re European Bank, supra.* In some of these cases weight appears to be given to the fact that the director was not actually present at the meeting when the transaction was concluded; but this cannot be of importance. If it were shown that Burgess urged the loan upon the board of directors, and actually voted in favor of it, his associates not seeing fit to intervene or object to this conduct, he would still have acted on his own behalf and of those whose interests and efforts were of necessity adverse to those of the corporation. To assume that under such circumstances the facts he knew were communicated to the

directors, and that he laid before them the fraud he was committing in wrongfully pledging property, would be a presumption too violent for belief, and would do great injustice to the remaining directors and the interests they represented."

See, also, *Allen* v. *Railroad Co.*, 150 Mass., at page 206 (22 N. E. 919, 15 Am. St. Rep. 191); *Corcoran* v. *Cattle Co.*, 151 Mass. 74 (23 N. E. 727); *West Boston Sav. Bank* v. *Thompson*, 124 Mass. 506; *First Nat. Bank* v. *Babbidge*, 160 Mass. 563 (36 N. E. 462); *Hummel* v. *Bank*, 75 Iowa, 689 (37 N. W. 954); *National Bank* v. *Feeney*, 9 S. Dak. 550 (70 N. W. 874); *First Nat. Bank* v. *Gifford*, 47 Iowa, 575; *First Nat. Bank* v. *Briggs' Assignees*, 70 Vt. 594 (41 Atl. 580); *Richardson* v. *Watson*, 51 La. Ann. 1390 (26 South. 422); *Frenkel* v. *Hudson*, 82 Ala. 158 (2 South. 758, 60 Am. Rep. 736); *Farmers', etc., Bank* v. *Payne*, 25 Conn. 444 (68 Am. Dec. 362); *Mayor, etc., of New York* v. *Bank*, 111 N. Y. 446 (18 N. E. 618); *Barnes* v. *Gaslight Co.*, 27 N. J. Eq. 33; *Commercial Bank* v. *Burgwyn*, 110 N. C. 267 (14 S. E. 623); *Merchants' Nat. Bank* v. *Lovitt*, 114 Mo. 519 (21 S. W. 825, 35 Am. St. Rep. 770); *Gallery* v. *Bank*, 41 Mich. 169 (2 N. W. 193, 32 Am. Rep. 149); *Wickersham* v. *Zinc Co.*, 18 Kan. 481 (26 Am. Rep. 784); *First Nat. Bank* v. *Christopher*, 40 N. J. Law, 435 (29 Am. Rep. 262).

The question, then, becomes pertinent, Is this the rule of law applicable to this case? The defendant knew when he gave these notes that he was not to receive the proceeds, and that, if used at the bank, they would be used for the benefit of the cashier. He also knew that in discounting them he would act in his own interest. Suppose it be conceded the cashier obtained the notes by representing the prior notes had not been paid. This undoubtedly would invalidate the notes when they were yet in the hands of the cashier, but it cannot be presumed that when he discounted the notes he told the officers of the bank of those facts which would invalidate the notes. We think

this would be a presumption contrary to all human experience. The record discloses the cashier was not authorized to discount paper generally, and that, before this paper was presented, the discount committee had passed upon the question of extending credit to defendant, and had decided the extent to which credit should be extended. There is nothing in the record to show knowledge on the part of the bank of any fraud in procuring the paper, except the knowledge of the cashier, and that knowledge is not imputable to the bank, because he represented himself only when the paper was discounted.

It is urged that upon March 15, 1898, the defendant was assured by the cashier that the $1,500 note had been paid, and that he was requested to renew the $1,000 note, with which request he complied, and that at this time he intended to obtain security against any loss upon both of said notes, but because of said statement he was lulled into security. This claim was denied by the cashier. Defendant's contention is that the bank was bound by the statements made by its cashier, and, if the defendant was misled by such statement to his injury, the bank is now estopped from claiming to the contrary, and cannot recover on either of the notes in question; citing *Oakland County Sav. Bank* v. *State Bank of Carson City,* 113 Mich. 284 (71 N. W. 453, 67 Am. St. Rep. 463); *Cochecho Nat. Bank* v. *Haskell,* 51 N. H. 116 (12 Am. Rep. 67); *Grant* v. *Cropsey,* 8 Neb. 205; *Benton County Sav. Bank* v. *Boddicker,* 105 Iowa, 548 (75 N. W. 632, 67 Am. St. Rep. 310); *First Nat. Bank* v. *Peltz,* 186 Pa. St. 204 (40 Atl. 470); 1 Daniel, Neg. Inst. § 392.

If it be conceded these authorities bear out the proposition of counsel, it is difficult to see how, under the circumstances of this case, it would help the defendant. The cashier attempted to negotiate the $1,000 note in Detroit. He failed to do so, and it was returned to the defendant. It does not appear that defendant relinquished any security he had because of this statement. On the contrary, it is shown that, when the $1,000 note was returned, the cashier,

without the knowledge of the bank, returned to the defendant all of the collateral he had in the bank. Neither does it appear that on March 15, 1898, Mr. Sessions could have secured the defendant against loss if he had desired to do so. Indeed, at this time nearly all the property of Mr. Sessions had been hypothecated, or in one way or another transferred, by him. His debts at this time were nearly, if not quite, $40,000, while his assets were merely nominal. He testified that, if Mr. Montgomery had demanded security, he could not have given it. It does not appear that this testimony was untrue. None of the authorities go so far as to hold the bank would be bound by the statement of Mr. Sessions that the note had been paid when in fact it had not been paid, unless the defendant, in reliance upon said statement, had done some act, or failed to do some act, which resulted in injury to him. This he has failed to show.

The judgment is affirmed.

The other Justices concurred.