FIRST NATIONAL BANK OF IRON RIVER, Appellant, vs. POHLAND, Respondent.

*November 20—December 8, 1925.*

*Bills and notes: Consideration: Accommodation paper: Promise of accommodated party while cashier of payee bank.*

1. Where the brother of the cashier of a bank gave a note to the bank with the understanding that it would be used for the purpose of diminishing the cashier's indebtedness and in securing its extension for six months, such consideration is valid and sufficient to support an action by the bank, since it is not necessary that the consideration move directly to the maker of the note; and the fact that the bank examiner finally ruled that the note could not be counted in reducing the indebtedness of the cashier is immaterial. p. 407.

2. The promise of the accommodated brother, even if made while he was cashier, that he would take care of the note when it was due, cannot be relied on by the maker as a defense against the bank, since he is chargeable with notice that the cashier could not bind the bank by such promise. p. 408.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed, with directions.*

Action on a promissory note. Defense, want of consideration. Omitting the statement of issues not material to the validity of the note in suit it appears that it was executed under the following circumstances: The defendant's brother, A. J. Pohland, had been cashier of the plaintiff bank and was indebted to it in a sum exceeding the lawful limit. To reduce his apparent liability and while cashier he forged defendant's signature to a note of $3,000 and deposited it in the bank. When it became due he forged another note and took up the first one. Later and after he ceased to be a cashier of the bank he wrote his brother as follows:

"Dear Brother: I suppose you are surprised to find a note for you to sign of $3,000, but as I am, my line in the bank is way overdrawn, my credit, I wish you would do this for me as the bank examiner, as I have stalled off the bank examiner several times, I can't do it any more; so do this as a favor for me and I will take care of the note as it falls due."

Defendant in response to that letter and without knowing that his brother was no longer cashier of the bank executed the note in suit and sent it to him.

The bank examiner seemed to have a doubt whether defendant's note of $3,000 might not be some obligation of his brother, and to settle such doubt the bank wrote defendant and asked him to sign the following acknowledgment:

"The *First National Bank of Iron River,* of Iron River, Michigan, is the holder and owner of a certain promissory note signed by me dated April 14, 1923, for the principal sum of $3,000, with interest at seven per cent. per annum from date until paid, payable October 21, 1923, after date. I hereby acknowledge that said promissory note is my personal obligation, given by me to said bank for a good and

valuable consideration, and hereby promise and agree to pay said note at maturity.

"Dated this 30th day of April, 1923.

"(Signed) H. J. POHLAND."

The defendant did so, and upon its receipt by the bank it was pinned to defendant's note and the bank examiner did not object to it at the next examination. Later and on May 14, 1923, the defendant in a letter to the bank said the note was a personal obligation of his brother, and the bank then requested him to take care of it and place his loan elsewhere, and on June 23, 1923, the bank was informed by a letter from the deputy comptroller that the note in question did not change the status of the excessive loan to the cashier and asked that it promptly be brought within the legal limit.

The jury found that the note in question was delivered by the defendant to the bank without any valuable consideration having been received by the defendant, and judgment for the defendant was entered dismissing the complaint upon the merits, and plaintiff appealed.

For the appellant the cause was submitted on the brief of *Francis Williams* of Sheboygan.

For the respondent there was a brief by *Bowler & Bowler,* and oral argument by *G. W. Buchen,* all of Sheboygan.

VINJE, C. J.    The case seems to have been tried on the theory that it was necessary to connect the note in suit with the forged notes of the cashier. It seems also to have been tried on the theory that a consideration must move from the bank directly to the defendant in order to establish the validity of the note. This is evidenced by the form of the question in the special verdict which read, "Was the note in suit executed and delivered by the defendant to the bank without any valuable consideration therefor having been received by the defendant?" Under the testimony the jury would be warranted in answering this question "No." In-

deed, that was the only answer the testimony sustained. The theory of the trial court that the consideration must pass directly from the payee to the maker is further evidenced by the following instructions given to the jury:

"But the Doctor says that those prior notes had no existence as genuine obligations of his. That he didn't give this note to renew the prior notes, and when he did give it he got nothing of value for it, and therefore that he ought not to be required to pay. If he gave it without any consideration, never received valuable consideration for it, it is not a legal obligation of his. If he did receive a valuable consideration for it he ought to pay it."

The vice of this theory of the case is that it overlooks both the law and the facts. The undisputed facts are that the defendant gave this note as an accommodation to his brother in order that his brother's liability to the bank might be reduced. In other words, it was distinctly understood that he was to receive no consideration for the note, but that the consideration was to go to his brother in two ways: first, by diminishing his indebtedness to the bank in the sum of $3,000, and second, by securing an extension of the time of payment for six months. This was a valid consideration and supports the bank's action. It is not necessary that the consideration should move to the maker of the note. It may move to a third party. In this case the consideration was passed directly from the bank to the cashier. The bank credited the cashier with the amount of this note, and in view of the inquiry made by the bank and the assurance under the defendant's signature that the note was his individual obligation and that the bank could regard it as such, makes it doubly certain that it was the intent and understanding of the parties that the consideration for this note should pass from the bank to the cashier and not from the bank to the maker of the note. In other words, the maker of the note by its execution borrowed $3,000 from the bank and loaned it to his brother,

and he in turn paid the $3,000 to the bank and his indebtedness was extinguished in that amount. The bank, therefore, gave a valuable consideration for it by reducing the indebtedness of the cashier to it.

The fact that the bank examiner finally considered that this note should not be counted in diminishing the cashier's liability to the bank is quite immaterial. The bank gave the cashier credit for it and that was the purpose for which the note was executed. The fact that the bank comptroller did not so hold after defendant had repudiated his absolute obligation on the note can make no difference so far as the bank is concerned. The brother's promise to take care of the note when due could not be relied upon by defendant as a defense against the bank, for even if his brother had been a cashier of the bank when the promise was made the defendant was chargeable with notice that the cashier could not bind the bank by such a promise. *State Bank v. Forsyth,* 41 Mont. 249, 108 Pac. 914, 28 L. R. A. N. s. 501, and note; *State Savings Bank v. Montgomery,* 126 Mich. 327, 85 N. W. 879; *Loomis v. Fay,* 24 Vt. 240; and *Thompson v. McKee,* 5 Dak. 172, 37 N. W. 367. The consideration, without question, passed from the bank to the cashier, and since it was understood by the maker that it should so pass when he signed the note, it became and is a valid instrument entitling the bank to a recovery thereon.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for the plaintiff for the amount of the note and interest.