J. EDWARD SIMMONS, as Receiver of THE AMERICAN LOAN AND TRUST COMPANY, Appellant, *v.* CHARLES O. THOMPSON, Respondent.

*Promissory note — an accommodation maker, who signs it under an agreement that it is not to be enforced against him, is not liable thereon — authority of an officer of a corporation to bind it.*

A party who has been requested to give a note, upon which further advances can be made by a trust company to an improvement company, and who is assured by an officer of the trust company, by whom the loan is being negotiated, that the note is to be merely a matter of form to enable the trust company to make the loan without criticism; that he will incur no personal liability by signing it, may successfully interpose such facts as a defense to the enforcement of the note against him by the payee, on the ground that the note was without consideration, and was delivered upon the condition that the maker should not be liable thereon.

Where an officer of a corporation, high in rank, is engaged in the transaction of the business of the corporation at its place of business, the corporation is bound by an agreement made by him, which is apparently within his authority.

INGRAHAM, J., dissented.

APPEAL by the plaintiff, J. Edward Simmons, as receiver of the American Loan and Trust Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 15th day of November, 1897, upon the verdict of a jury, and also from an order, entered in said clerk's office on the 11th day of November, 1897, denying the plaintiff's motion for a new trial.

*David Willcox,* for the appellant.

*John A. Garver,* for the respondent.

RUMSEY, J.:

The action was brought upon a promissory note made by the defendant and alleged to have been delivered by him to the American Loan and Trust Company, of which the plaintiff afterwards became receiver. The defense was that the note was delivered for the convenience of the American Loan and Trust Company and without consideration, to stand as an apparent security for a loan made by that company to the Decatur and Nashville Improvement Company, and upon an express agreement made at the time of delivery that the defendant was not to be liable upon the note. The defendant gave evidence tending to establish these facts, which was submitted to the jury, who found that such an agreement was made and that the note was delivered in pursuance of it and for the purpose mentioned in the answer, and they found a verdict for the defendant. A motion for a new trial was denied after the verdict, and the appeal is taken from the judgment entered upon the verdict and from that order.

There is no substantial dispute as to the facts. The defendant was the secretary and treasurer of the Decatur and Nashville Improvement Company, having only a nominal connection with the company and no interests whatever in it. The Decatur and Nashville Improvement Company had been engaged in the construction of the Decatur, Chesapeake and New Orleans railroad. The American Loan and Trust Company had advanced to the improvement company $300,000, which was secured by the bonds of the railroad company. Further advances were necessary to enable the improvement company to complete its work. When that was completed, of course, the stocks and bonds of the railroad company would become more valuable, and the loan and trust company was, therefore, greatly interested in the completion of the railroad. Evans, the vice-president of the loan and trust company, seems to have had charge of the loan to the improvement company. It appeared from the evidence offered by the defendant that it was stated to him that the loan to the improve-

ment company had been criticised, and that a further loan to the company could only be made by procuring two or three parties to give their personal notes and make the loan in that way to the company, and thus avoid further criticism. The defendant was requested to be one of the parties to give a note upon which further advances might be made to the improvement company. He objected to assuming any personal liability, but was assured that the note was merely a formal matter, to enable the trust company to make a loan to the improvement company without criticism; that he would incur no personal liability by signing it, and that the trust company would take care of the note. This conversation was had at the time of the delivery of the note to Evans at the office of the loan and trust company, 'Evans being the person who was intrusted with the management of this business.

Upon that state of facts, the defendant insisted that his case was controlled by the rule of law that it is a defense to the enforcement of a promissory note against the maker in the hands of an original party to it, that the note was without consideration and was delivered upon condition that the maker should not be liable thereon. (*Higgins* v. *Ridgway*, 153 N. Y. 130 ; 90 Hun, 398 ; *Garfield Nat. Bank* v. *Colwell*, 57 id. 169.) This case, as we think, is clearly within the rule laid down by the cases cited. The facts here are almost identical with those of the case of *Higgins* v. *Ridgway* (*supra*). In that case, the defendant, who was sued upon the note, was a clerk of the firm of Page, Carey & Co. Here, the defendant was the secretary of the improvement company. Page, Carey & Co. had received large loans from the North River Bank. Here the improvement company had received large loans from the trust company. Page, Carey & Co. desired to increase their loans, as did the trust company in this case. The note made by Ridgway was given to enable the bank to advance the money to Page, Carey & Co. without criticism, as the note here was given that the loan might be made by the trust company. The proceeds of Ridgway's note were put to the credit of Page, Carey & Co., as in this case the proceeds were put to the credit of the improvement company. In neither case was anything received by the maker of the note, or paid to him. The note was delivered to the North River Bank by Ridgway upon an

FIRST DEPARTMENT, MAY TERM, 1898.　　　　[Vol. 29.

express agreement that he should incur no liability upon it, precisely as was the case here. There is no distinction in the facts, and the cases are alike, not only in principle but in instance, so that the decision in *Higgins* v. *Ridgway* is a precise authority in the case at bar.

It was claimed by the plaintiff that there was no proof that Evans, who was vice-president of the trust company, had authority to make the agreement. But it was proved that Evans was the man by whom these loans were negotiated, that he did in fact make the agreement with Thompson, that the note was delivered to him at the office of the trust company at the time the agreement was made and for the purpose of being used to complete this loan; and it needs no citation of authority to establish the proposition that when an officer of a corporation, high in rank, is engaged in the transaction of the business of the corporation at its place of business, the corporation is bound by any agreement that he makes which is apparently within his authority. In this case, the corporation, having brought an action upon this note, which was delivered to Evans, must be deemed to have ratified the contract made by Evans to procure the giving of the note. It cannot now adopt the note and refuse to adopt the contract by which it was procured.

No exception is found in the case which requires examination, and for the reasons above stated the judgment and order must be affirmed, with costs.

PATTERSON and O'BRIEN, JJ., concurred; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

I dissent. The action was brought to recover the amount of a promissory note made by the defendant, whereby he promised to pay the Decatur and Nashville Improvement Company, or order, $10,000, which said note was duly indorsed by the payee and delivered to the American Loan and Trust Company. The plaintiff as receiver of that company brings this action. The defense is that the said note was signed by the defendant at the trust company's request, solely for the purpose of enabling it to conceal the true amount of its loan to the said Decatur and Nashville Improvement Company; and that, at the time of the execution and delivery of the note to the trust company it was expressly understood and

agreed that the defendant should never be liable for the said note, or called upon to pay the same.

Counsel for the plaintiff asked the court to direct a verdict for the plaintiff for the amount of the note, on the ground that there was no proof of any agreement binding upon the trust company to the effect that the note should not be paid in accordance with its terms, and that there was no proof establishing the defense alleged. This motion was denied, and the plaintiff excepted. The court charged the jury that if they reached the conclusion " that Mr. Evans, as vice-president of the American Loan and Trust Company, agreed with the defendant that he, Thompson, the maker of the note, should incur no liability by the signing and delivery of the note, and accepted the note as an officer of the American Loan and Trust Company under those circumstances, and made the advances to the Decatur and Nashville Improvement Company, to whose order the note was given, with that understanding and full knowledge of those facts, then the defendant incurred no liability to the company by the signing of the note." To that the counsel for the plaintiff excepted. These exceptions present the only matter to be determined upon this appeal.

The note upon its face was an unconditional obligation upon the defendant to pay a sum of money at a time named. It was executed by the defendant individually, who at that time was the secretary and treasurer of the payee of the note. It was indorsed by the defendant, acting as such secretary and treasurer, and was accepted by the president of the trust company from the defendant, and for it the trust company paid to the payee, on whose account it was presented to the trust company, the face amount of the note. There is no evidence that the president of the company that made the loan had any knowledge of the alleged conversation between Evans, the vice-president of the trust company, and the defendant, and it is clearly to be adduced from the evidence that if the president of the trust company had been informed that there was any understanding between Evans and Thompson as to Thompson's liability upon the note, other than that which expressly appears upon the face of the note itself, the note would not have been accepted. The defendant had been expressly told by Evans that Mr. Baldwin, the president of the trust company, had objected to any more advances

to the Decatur and Nashville Company, and that the bank examiner had been there and had criticised some of the loans, and that it would have to be fixed up in some other way. That fact is testified to by Mr. Belden, one of the plaintiff's witnesses, and is not disputed by the plaintiff. Thus the responsible officer of this company who made the loan had no knowledge of any understanding between Evans and the defendant that the note was not what it purported to be upon its face, namely, an absolute obligation for the payment by the defendant to the trust company of the amount named in the note; and he certainly made no agreement with the defendant that the defendant should not be responsible. An examination of the statement that Evans made fails to show, I think, that Evans purported to make any agreement on behalf of the trust company that this note should not be an obligation of Thompson. It purported on its face to be such an obligation. By it Thompson agreed to pay to the payee, or to its order, the sum of money named. Silver, a director of the trust company, but not an executive officer or authorized to make a contract on its behalf, had requested the defendant to make this note, and, in pursuance of that request, the defendant called upon Evans, not at the office of the trust company, where he was performing any duties for the company, but at Evans' private office. Evans there assured the defendant that there would not be any liability at all; and that was based upon the fact then stated to the defendant that the note was only for thirty days, and that during that period the trust company, through its officers, would raise money enough to meet the next payroll and complete the road, and that the note would be returned to the defendant at the end of thirty days. It seems to me that this did not purport to be a contract on behalf of the trust company, but was a statement by Evans as to what the trust company would do, which would make it unnecessary for the defendant to pay the note. Belden's statement of that interview is that Evans told the defendant "we have got a good deal of money in this and we have got to see the thing through; we have got to get it through;" that "during the next thirty days or so Mr. Silver has assured me these subscriptions of $100,000 will be paid; then this paper will be taken up and you are relieved of further responsibility." To that the defendant said, "On that statement of yours,

Mr. Evans, I am willing to make the paper." The idea embodied in this statement is that, if the defendant made the paper, funds would be procured through the negotiations of the parties or the payment of subscriptions to build the road, which would enable the company, the payee of the note, to take up the note and thus return it to the defendant; and, according to Belden, the release of the defendant from further liability upon the note would be the result of these operations. The further statement of Evans at the time the note was made, as testified to by the defendant, that the defendant need not worry about his liability at all; that the trust company would take care of that — or, as Belden testified, that Evans said, "We have got to go through with this and we will see it through " — was simply a reiteration of the statement that Evans had made before, that the trust company had to see the thing through, and that the defendant should not be injured by the transaction. But all of these conversations were with Evans, who was the vice-president of the company, not its principal executive officer, or the person who made the loan, and did not impose any conditions attending the delivery of the note to the officer of the trust company; so that, as between the original parties, a want of consideration may be shown. The only object in the execution and delivery of this note by the defendant was that there should be an additional obligor who would be liable for the loan made to the improvement company. The president of the trust company had objected to making further loans to the improvement company, and the bank examiner had criticised the loans. Both of these facts had been stated to the defendant, and he was asked to make this note for the purpose of obviating the objection of the president of the trust company to making any further loans to the improvement company, and to enable it to be fixed up in some way so as not to subject the additional loans to this criticism and objection. The mere formal making of a note by the defendant, if there was no liability upon the defendant to pay the note, would neither obviate the objection of the president of the trust company nor meet the criticism of the bank examiner. That Thompson knew. He could not have supposed that the note was given for any purpose except to give credit to the corporation for whose accommodation the note was made, namely, the improvement company; and he relied upon Evans' assurance, not

in form made on behalf of the trust company, that by realizing upon the subscriptions, or a disposition of the securities, funds would be obtained to meet this note, so that no personal obligation would be imposed upon the defendant. This purported to be nothing more than an assurance by Evans of that fact; not a distinct understanding made between the maker of this note and the corporation acting through its officers that the note was delivered upon condition that there would be no liability in favor of the trust company against the maker of the note. As before stated, this instrument was an absolute obligation on behalf of the defendant to pay to the payee or to its order the sum of money named; and I do not understand that the Court of Appeals has abrogated the rule that a party to such an instrument is precluded from giving testimony as to any cotemporaneous agreement which would tend to vary the terms of the agreement actually executed, or the obligation imposed upon the person who has executed such an agreement by its express terms. The enforcement of that rule is certainly as necessary in relation to the obligation upon a promissory note as it is upon any other instrument in writing which the parties have duly executed and which imposes obligations upon one of the contracting parties. An apparent exception to this rule has been recognized in several late cases. (*Garfield Nat. Bank* v. *Colwell*, 57 Hun, 169, and *Higgins* v. *Ridgway*, 153 N. Y. 132.) This last case, I think, states the rule and its limitation. That was brought upon a note made by the defendant, whereby he promised to pay to the order of himself a sum of money. It was indorsed by him and delivered to the president of the bank at which it was payable. The president of the bank told him when the note was made and delivered that he wanted him to make a note for $15,000. The defendant said that he was not responsible and did not want to do any such thing, and asked the president what it was for. The president said that it was for the bank and that he, the defendant, would not be held on the note, that he would get nothing for it and would not be liable upon it. And the court say that the question arising is, whether this transaction as testified to by the defendant constituted a delivery of the note so as to fall within the principle of the cases there cited, or whether the defendant's testimony was an attempt to vary or contradict the written contract between the parties and consequently inadmissible. The court held

that the import of the defendant's testimony was that the delivery of the note in suit was conditional and was for the accommodation of and to serve some particular purpose for the bank; and that as the bank could not be regarded as a *bona fide* holder, the defendant was not liable to the bank.

But the facts here are entirely different. This note was not given at the request of the trust company, nor for its accommodation. It was given to enable the payee of the note to obtain a sum of money from the trust company, which its officers would not pay to the payee of the note, the improvement company, without the note being executed.

In *Higgins* v. *Ridgway* and *Garfield Nat. Bank* v. *Colwell* (*supra*) the testimony was that the note was executed at the request of the president of the bank for the benefit or accommodation of the bank, and not for the accommodation of any third party. No consideration was paid by the bank in either case for the note, and the bank incurred no liability or obligation upon its account, and the note as held by the bank in either case represented no money or property which had been paid by the bank for it. It simply stood in its hands as an obligation made for its benefit upon which it advanced no money and upon which it had incurred no liability.

Here the transaction was entirely different. Of that transaction the defendant had full knowledge. He knew the trust company would not make the loan to the improvement company except upon the condition of the execution of this note, and that the note was executed by him and delivered to the trust company for the purpose of enabling the improvement company to obtain the money upon it. There was thus no conditional delivery of the note to the trust company. It was delivered for the purpose of procuring a loan, and of that the defendant had knowledge. Any agreement between himself and an officer of the trust company was simply an agreement that this obligation which he had assumed toward the trust company, and for which it had advanced this money, should not be an obligation of his, and was, therefore, a cotemporaneous agreement which contradicted the writing, and was an attempt to vary or contradict the written contract between the parties, and consequently inadmissible.

For these reasons I think the plaintiff was entitled to judgment.

Judgment and order affirmed, with costs.