## STATE BANK OF MOORE, APPELLANT, *v.* FORSYTH, RESPONDENT.

(No. 2,821.)

(Submitted April 9, 1910.  Decided April 30, 1910.)

[108 Pac. 914.]

*Banks and Banking—Authority of Cashier—Promissory Notes —Consideration—Principal and Agent—Knowledge of Agent, When not Imputable to Principal.*

Promissory Notes—Want of Consideration—Defense.

1.  It is a valid defense to the enforcement of a promissory note against the maker by the party to whom it was delivered, that the note was without consideration and was delivered on condition that the maker should not be held liable thereon.

Same—Banks and Banking—Authority of Cashier.

2.  Defendant was induced by the cashier of a bank to sign and deliver a note to the bank, in order that the cashier might substitute it for notes of his own held by the bank, under the assurance of the cashier that he would not be liable upon it, and would never be asked to pay it.  The cashier turned the note in to the bank, withdrew his own, and received the excess of the note over his indebtedness to the bank in money.  There was no evidence that the officers or directors of the bank had authorized the cashier to make any such arrangement with defendant, who never before had any dealings of like kind with the cashier.  *Held*, that the latter had no authority, by virtue of his office, to make such an arrangement; that defendant was chargeable with notice that the arrangement was not authorized, and hence that defendant acted upon the cashier's statement at his peril.

Same—Consideration—Sufficiency.

3.  Defendant's note, given to be substituted for the cashier's notes referred in paragraph 2 above, was supported by a sufficient consideration, since the cashier's notes were withdrawn from the bank's assets and the excess of the amount of defendant's note over the cashier's obligations was paid by the bank to the latter.

*Same—Consideration on—Banks and Banking—Fraud.*
   4.  Defendant, who knew, or should have known, that the cashier, in requesting him to sign the note so as to be able to substitute it for his own obligations, because it "would not look well to the bank examiner" to find his paper in the bank, was engaged in perpetrating a fraud upon plaintiff, could not escape liability on the alleged ground that the note had been given without consideration.

*Same—Banks and Banking—Knowledge of Cashier, When not Imputable to Bank.*
   5.  The knowledge possessed by plaintiff's cashier that defendant received nothing for the note executed by him could not be imputed to the bank, since, while the knowledge of an agent is generally imputable to his principal, the rule does not apply where the conduct of the former is such as raises a clear presumption that he would not communicate the fact in dispute, as where, by imparting knowledge to the principal, the consummation of a fraud in which the agent was engaged would be prevented.

*Appeal from District Court, Fergus County; J. Miller Smith, Judge of the First Judicial District, presiding.*

ACTION by the State Bank of Moore against John R. Forsyth. Judgment for defendant, and plaintiff appeals from it and an order denying it a new trial. Reversed and remanded, with directions to enter judgment in favor of plaintiff.

In behalf of Appellant, there was a brief and oral argument by *Mr. O. W. Belden.*

A contemporaneous parol agreement between the parties to a note that it was not to be enforced as between the parties constitutes no defense to the note. (*Davy* v. *Kelley,* 66 Wis. 452, 29 N. W. 232; *Dolson* v. *De Ganahl,* 70 Tex. 620, 8 S. W. 321; *Tacoma Mill Co.* v. *Sherwood,* 11 Wash. 492, 39 Pac. 977.) Parol evidence of an oral agreement alleged to have been made at the time of the making of a promissory note cannot be admitted to vary, qualify, contradict or add to, or subtract from, the absolute terms of the written contract. (*Forsyth* v. *Kimball,* 91 U. S. 291, 23 L. Ed. 352; *First National Bank* v. *Tisdale,* 18 Hun, 151; *True* v. *Shepard,* 51 N. H. 501; *Mitchel* v. *Noell,* 39 Ind. 399; *Armstrong* v. *Scott,* 36 Fed. 63; *Innerarity* v. *Bank,* 139 Mass. 332, 52 Am. Rep. 710, 1 N. E. 282; *School District* v. *De Weese,* 100 Fed. 705; *Jones* v. *First Nat. Bank of Lincoln,* 3 Neb. (Unof.) 73, 90 N. W. 912; *Peterson* v. *Fer-*

*bache,* 4 Neb. (Unof.) 249, 93 N. W. 1011; *Earle* v. *Enos,* 130 Fed. 467.)    Admitting for the purpose of argument that Thurston did enter into the agreement with defendant as defendant testified, it cannot be contended that in so doing he was acting for appellant in the matter.    The transaction was antagonistic to the welfare of the bank, and shows collusion and fraud, of which the appellant was innocent, between Thurston, the cashier, and respondent.    Under such circumstances, the act of the cashier is not the act of the bank.    (*State Sav. Bank of Ionia* v. *Montgomery,* 126 Mich. 327, 85 N. W. 879; *Third Nat. Bank* v. *Harrison,* 10 Fed. 243, 3 McCrary, 316; *Atlantic Nat. Bank* v. *Harris,* 118 Mass. 147; *Hummell* v. *Bank,* 75 Iowa, 689, 37 N. W. 954.)

Admitting defendant's statement to be true that appellant paid the proceeds of the note to Thurston, its cashier, then appellant parted with value for the instrument.    Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who become such prior to that time.    (Revised Codes, sec. 5874.)    Even if respondent did not receive the consideration, he was still an accommodation maker and lent his name to Thurston, the cashier.    By so doing, he became liable on the note to appellant who parted with value for the note.    (Revised Codes, sec. 5877; *Pauly* v. *O'Brien,* 69 Fed. 460; *Earle* v. *Enos,* 130 Fed. 467.)

A bank is not chargeable with notice of the fraudulent act of its employee outside the scope of his authority, and in furtherance of his own personal designs, solely because he is an employee.    (*Jones* v. *First Nat. Bank of Lincoln,* 3 Neb. (Unof.) 73, 90 N. W. 913; *School District* v. *De Weese,* 100 Fed. 709; *Innerarity* v. *Bank,* 139 Mass. 332, 52 Am. Rep. 710, 1 N. E. 282; *State Savings Bank of Ionia* v. *Montgomery,* 126 Mich. 327, 85 N. W. 879; *Earle* v. *Enos,* 130 Fed. 467; *Pauly* v. *O'Brien,* 69 Fed. 460.)    A principal is not bound by the act of his agent where agent has an adverse interest.    (Mechem on Agency, sec. 713.)

The consideration in this case actually passed from the plaintiff bank, and having paid the consideration, defendant's plea of want of consideration, so far as he was concerned, is no defense to the action. (*Pauly* v. *O'Brien, Earle* v. *Enos, supra.*)

*Messrs. Blackford & Blackford* submitted a brief in behalf of Respondent. *Mr. W. M. Blackford* argued the cause orally.

Evidence of the oral agreement of plaintiff's cashier with defendant made at the time of the delivery of the note sued on, that defendant would not be held liable on it and that the bank would not ask him to pay it, and all the circumstances under which the note was made and delivered, and that it was made and delivered at the request and for the accommodation of the bank, was proper and competent. The answer expressly set up the oral agreement as a defense to plaintiff's recovery on the note. That this is a good defense to plaintiff's action is supported by the soundest reason in numerous authorities. (*Higgins* v. *Ridgway*, 153 N. Y. 130, 47 N. E. 32; *Breneman* v. *Furniss*, 90 Pa. 186, 35 Am. Rep. 651; *Burke* v. *Dulaney*, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; *Benton* v. *Martin*, 52 N. Y. 570; *Garfield Nat. Bank* v. *Colwell*, 57 Hun, 169, 10 N. Y. Supp. 864; *Persons* v. *Hawkins*, 41 App. Div. 171, 58 N. Y. Supp. 831; *McFarland* v. *Sikes*, 54 Conn. 250, 1 Am. St. Rep. 111, 7 Atl. 408; *Harris* v. *Brooks, Jr.*, 21 Pick. 195, 32 Am. Dec. 254; *Grierson* v. *Mason*, 60 N. Y. 394; *Juillard* v. *Chaffee*, 92 N. Y. 529; *Belleville Sav. Bank* v. *Bornman*, 124 Ill. 200, 16 N. E. 210.) As between the maker and payee of a promissory note, the defense of want of consideration may be interposed (*Simpson Centenary College* v. *Tuttle*, 71 Iowa, 596, 33 N. W. 74), and may be shown by parol. (*Rossiter* v. *Loeber*, 18 Mont. 373, 45 Pac. 560; *Hannan* v. *Hannan*, 123 Mass. 441, 25 Am. Rep. 121; *Benton* v. *Martin*, 52 N. Y. 570, 575; *Juillard* v. *Chaffee*, 92 N. Y. 529; *Moffatt* v. *Bulson*, 96 Cal. 106, 31 Am. St. Rep. 192, 30 Pac. 1022; *Baird* v. *Baird*, 145 N. Y. 659, 40 N. E. 222, 28 L. R. A. 375; *Devlin* v. *Quigg*, 44 Minn. 534, 20 Am. St. Rep. 592, 47 N. W. 258, 10 L. R. A.

665; *Belleville Sav. Bank* v. *Bornman,* 124 Ill. 200, 16 N. E. 219.)   Nor do the words "value received" in a promissory note preclude an inquiry into the consideration. (*Simpson Centenary College* v. *Tuttle, supra.*)

Where a note is to be merely a matter of form to enable a trust company to make the loan without criticism, and the officer in charge assures the party making the note that he will incur no personal liability by signing it, he may successfully interpose such facts as a defense to the enforcement of the note against him by the payee, on the ground that the note was without consideration and was delivered upon the condition that the maker would not be liable thereon. (*Simmons* v. *Thompson,* 29 App. Div. 559, 51 N. Y. Supp. 1018.)

Upon the principle that where a party deals with a corporation in good faith, and is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, the corporation is bound by the contract, if not *ultra vires,* although such defect or irregularity in fact exists.   (See *Merchants' Nat. Bank* v. *State Nat. Bank,* 10 Wall. 604, 644, 19 L. Ed. 1008; *Martin* v. *Webb,* 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49, 52; *Cox* v. *Robinson,* 82 Fed. 277, 27 C. C. A. 120; *Simmons* v. *Thompson,* 29 App. Div. 559, 562, 51 N. Y. Supp. 1018; *Nicholson* v. *Randall Banking Co.,* 130 Cal. 533, 62 Pac. 930; *G. V. B. Min. Co.* v. *First Nat. Bank of Hailey,* 89 Fed. 439, 95 Fed. 23, 36 C. C. A. 633; *Coolidge* v. *Schering,* 32 Wash. 557, 73 Pac. 682; *Ford* v. *Hill,* 92 Wis. 188, 53 Am. St. Rep. 902, 907, 66 N. W. 115; *Bell* v. *Hanover Nat. Bank,* 57 Fed. 821; *Carpy* v. *Dowdell,* 115 Cal. 677, 47 Pac. 695; *Fisher* v. *Simons,* 64 Fed. 311, 12 C. C. A. 125; *Tourtelot* v. *Whithed,* 9 N. D. 407, 84 N. W. 8; *Fifth Ward Sav. Bank* v. *First Nat. Bank,* 48 N. J. L. 513, 7 Atl. 318; *Blake* v. *Domestic Mfg. Co.* (N. J.), 38 Atl. 241.)

The defendant's answer having squarely presented the issue of want of consideration for the note sued on, and evidence having been given on the part of the defendant in support of that defense, the trial court rightly instructed the jury that the

burden of proof was on the plaintiff to show the note was given upon a valuable consideration, and that, if that was doubtful upon the whole evidence, plaintiff could not recover. (*Ginn* v. *Dolan* (Ohio), 90 N. E. 141; *Kenny* v. *Walker*, 29 Or. 41, 44 Pac. 501; *Best* v. *Rocky Mountain Nat. Bank*, 37 Colo. 149, 85 Pac. 1125, 7 L. R. A., n. s., 1035; *Owens* v. *Snell, Heitshu & Woodard Co.*, 29 Or. 483, 44 Pac. 827; *Nickerson* v. *Ruger*, 76 N. Y. 279; *Manistee Nat. Bank* v. *Seymour*, 64 Mich. 59, 31 N. W. 140; *Perley* v. *Perley*, 144 Mass. 104, 10 N. E. 726; *Search* v. *Miller*, 9 Neb. 26, 1 N. W. 975; *Langley* v. *Wadsworth*, 99 N. Y. 61, 1 N. E. 106.)

MR. JUSTICE SMITH delivered the opinion of the court.

The plaintiff began this action in the district court of Fergus county to recover judgment against the defendant on a certain promissory note for $1,550, dated June 20, 1907, due four months after date, with interest after maturity at the rate of ten per cent per annum. The defendant answered, admitting the corporate capacity of the plaintiff, and that the latter was the owner and holder of the note. He also admitted the making and delivery of the note, but denied that it was given for a valuable consideration, or for any consideration whatever. By way of affirmative defense he alleged that the note was made at the express instance and request of the plaintiff, without consideration, and for plaintiff's accommodation. He further pleaded in his answer that at the time the note was made and delivered, it was agreed between him and the plaintiff that he should not be required to pay the note, and that he should not be in any manner liable thereon. As a further affirmative defense he alleged that the note was procured by plaintiff through false and fraudulent representations on the part of plaintiff's cashier, with intent to deceive and defraud him. This latter defense was abandoned at the trial. The plaintiff by replication denied the new matter set forth in the answer. The cause was tried to the district court of Fergus county sitting with a jury. A verdict was returned in favor of the defendant, and

judgment was entered thereon. From that judgment and an order denying a new trial the plaintiff has appealed to this court.

The note purported to have been made for value received. After the same was introduced in evidence the plaintiff rested. Thereupon the defendant testified, in part, as follows: ''This note was made in the bank at Moore, at C. W. Thurston's bank. Thurston was at that time cashier of the bank.    Q. How came you to make this note?'' This question was objected to on the ground that any oral contemporaneous agreement would tend to vary and change the tenor of the note, and because it had not been shown that Thurston was acting within the scope of his authority as cashier. The objection was overruled, and the witness continued: ''Well, Mr. Thurston asked me to make a note, sign a note, for $1,500, and I told him that I did not want to sign the note, and he asked me why, and I told him I could not pay the note if I was called upon to do so. He said that the bank would not hold me responsible. He said that his paper would not—that the bank would not want his paper in there, and that it would not look well to the bank examiner, and I told him that was the condition under which I would sign it; that the bank would not hold me liable or responsible on the note, and he said the bank would never ask me to pay it, and that he would look after it, and that I never need bother about it. And I signed the note, and he took it and turned it in to the teller. I did not receive any of the proceeds of the note. I was not called upon to pay the note at the time of maturity. It must have been a month after the note matured before anything was said about it. Mr. Thurston was not still cashier of the bank. Mr. Hedrick, the cashier that went in afterward, called upon me to pay the note. It is supposed Thurston got the proceeds of the note. Of course, at that time I didn't know whether he did or not. What makes me think he did is because it has been shown that he did to my mind. It is through matters subsequently learned that I base my answer that Thurston got the proceeds of the note. Of my own knowledge I

don't know anything about the matter. I had no dealings of that sort with Thurston before. He and I were in the real estate business together at that time. We were partners at that time in the Judith Basin Realty Company. At that time I was occupying an office in the State Bank of Moore; I had a back room. The Judith Basin Realty Company did not share any of the proceeds of that note. I did most of the work of the realty company."

John N. Phillips, a former bookkeeper and teller of the bank, testified: "Mr. Thurston was cashier of the bank until September 3, 1907. When this note went into the bank it took up three of Mr. Thurston's cash items, aggregating $480.48, which had been running some little time; also two notes carried in the bank by Mr. Thurston, aggregating $423.07. These notes were given to the bank by Thurston, and the proceeds of the Forsyth note, or part of it, took up those two notes. Four drafts issued by the bank on June 20, 1907, through Mr. Thurston, aggregating $51.40, were also paid by Thurston from the proceeds of the note. Part of the other proceeds of this note went to the credit of Mr. Thurston's account, and he took cash for some of it. Under date of June 20, 1907, Thurston's account shows a credit of $400. That $400 came from the proceeds of the Forsyth note. The balance was taken in cash. While I was employed in the bank, Mr. Thurston had charge of making the loans; that was principally his work. He made all kinds of loans. He made loans as large as the capital of the bank would stand. I don't think he consulted any of the directors of the bank. I know positively that on certain loans he did not consult with other directors of the bank. As long as he had charge of the bank he pursued that line of conduct, or making loans of that character and size without consulting the other directors or officers of the bank. He had charge of the promissory notes taken by the bank. In making payments of notes no one was consulted but the cashier. I didn't consult anyone except Thurston. If he was away I used my own judgment in the matters. The bank had a manager. Mr.

Thurston was the manager. The directors of the bank held meetings once a year, on the 1st of January. They never held any meetings after that, until September of the year 1907. Mr. Hauck, the president of the bank, was about the bank there quite often, probably twice a week, or once. He usually came into the bank and talked a little while and went out again. Mr. Thurston issued the drafts of the bank exclusively. He made the loans if he was there. If he was away, I made them in his place. Mr. Thurston used his own judgment in making loans. There was no one there for him to consult with. It was the custom to make loans immediately upon application. A great many promissory notes were taken without security. Notes were usually taken by Thurston without consulting anyone else. The president of the bank resided ten miles from Moore, and the vice-president resided fifty miles away. Thurston was in charge of the bank as manager on June 20, 1907. This note came to the bank in the usual course of business. Thurston brought it to me. The rest of the banking force were working under him. He overlooked their work. He had charge of the moneys.''

At the close of defendant's case the plaintiff moved for a directed verdict in its favor. The motion was overruled. Thereupon John C. Hauck, the president of the bank, was called as a witness for the plaintiff. He said: ''I was supervisor of the affairs of the bank during the year 1907. Every once in a while we would go over the accounts and check them all up, I and Mr. Warr, the cashier of the Bank of Fergus County. We did that for about four months after the bank was started, and then we done it off and on ever since up to the time Thurston left. I went through everything that was in the bank several times in the two years, about five or six times I should judge. That was when Thurston had charge of the bank. I never, as president, authorized Thurston to make any collateral agreements that the paper of the bank should not be, or was not to be, collected. I don't think we directors had any meetings in the spring and summer of 1907.''

41 Mont.—17

At the close of all the testimony, the plaintiff's counsel requested the court to charge the jury that, if the State Bank of Moore paid any consideration for the note, their verdict must be for the plaintiff, and also that the alleged oral agreement of Thurston that the defendant would not be called upon to pay the note was no defense to the action. The court refused the requests. Over appropriate objection by the plaintiff, the court advised the jury that, as between the maker and payee of a promissory note, oral evidence touching the consideration thereof could be considered by them, and that if they found that the defendant received no consideration, and that the note was made for the accommodation of the plaintiff, their verdict should be for the defendant. The jury was also instructed, without objection, that: "If Thurston owed to or borrowed from the plaintiff the amount of the note sued upon, and if, at the request of Thurston, the defendant gave to the plaintiff the note sued upon in satisfaction of such indebtedness of Thurston to the plaintiff, and the plaintiff accepted the note as such satisfaction, then the note was given upon sufficient consideration, and the plaintiff is entitled to recover the amount due on the note."

The court also gave to the jury instruction No. 3, as follows: "The court instructs the jury that the burden of proof was on the plaintiff to show that the note was given upon a valuable consideration, and that, if that was doubtful upon the whole evidence, plaintiff could not recover; that the admission by the defendant of the execution of the note and its production in evidence made a *prima facie* case for the plaintiff upon which the jury might find a verdict for plaintiff, unless the defendant introduced evidence which showed that it was not given for a valuable consideration, or evidence to render it doubtful in the minds of the jury whether it was given on a valuable consideration, and that if not so given, or if it was doubtful whether it was given for a valuable consideration, the plaintiff could not recover." Plaintiff objected to this instruction, for the reason that it placed the burden of proving the considera-

tion for the note upon plaintiff, whereas the burden of show-
ing a failure of consideration was upon defendant; also be-
cause the instruction is in conflict with instruction No. 9, which
reads as follows:

"(9) You are instructed that the note sued upon in this
case imports a consideration, and the burden of showing a want
of consideration sufficient to support a written instrument lies
with the party seeking to invalidate it."

Instruction No. 7 reads as follows: "The court instructs the
jury that, if you find from the evidence that the defendant
signed the note sued upon in this case as an accommodation
maker for the plaintiff, and delivered the note to the plaintiff,
or one of its officers for the bank, the defendant cannot be held
liable thereon, no matter how the bank may have dealt with the
note, so long as it retained ownership and control thereof,
and, even though you find that the bank, after the note was de-
livered to it, gave Thurston the benefit of the whole or a part
of it, this fact would not render defendant liable on the note."
This instruction was also objected to for several reasons; among
others, that it conflicts with instructions 8, 10, and 11, given by
the court. These latter instructions read as follows:

"No. 8. If you find from the evidence that the note in ques-
tion was made, executed, and delivered to the State Bank of
Moore by John Forsyth, for the accommodation of Mr. Thurs-
ton, and that Thurston received the benefits therefrom, then you
must find for the plaintiff."

"No. 10. The plaintiff in this action is a corporation, and
you are instructed that a corporation is bound by the acts of its
officers or agents only so far as they act within the scope of
their authority. In this action, the burden is upon the defend-
ant to prove by a preponderance of the evidence that in mak-
ing the oral agreement, if you believe that such oral agreement
was made, Thurston, the cashier of the plaintiff, was acting
within the scope of his authority as such cashier, or that such
agreement was subsequently ratified by the plaintiff in the ac-
tion. If the defendant has failed to prove these allegations by

a preponderance of the testimony, your verdict should be for the plaintiff.

"No. 11. In this action the defendant claims, among other things, that the note sued upon was made for the accommodation of the plaintiff. You are instructed that an accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser without receiving any value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value notwithstanding such holder, at the time of taking an instrument, knew him to be only an accommodation party."

We think the foregoing extracts from the instructions fairly illustrate the theory upon which the case was tried, and that the motions and exceptions of counsel for appellant are sufficient to raise the vital questions argued in this court. We shall not analyze the instructions, but will content ourselves with the statement that, assuming that they correctly state the law, the jury failed to follow them. The testimony, however, is practically uncontradicted. There is no conflict in essentials, and, in our judgment, but one inference may be drawn from it. Therefore the cause should not have been submitted to the jury. The court should have directed a verdict for the plaintiff.

1. The first question arising is whether the defense of want of consideration in the note, pleaded and attempted to be interposed by the defendant, was a valid one.

In the case of *Higgins* v. *Ridgway,* 153 N. Y. 130, 47 N. E. 32, the court of appeals, after a review of the New York cases on the subject, held that it was a valid defense to the enforcement of a promissory note against the maker, by the party to whom it was delivered, that the note was without consideration, and was delivered upon the condition that the maker should not be held liable thereon. To the same effect are the rulings of the courts in *Breneman* v. *Furniss,* 90 Pa. 186, 35 Am. Rep. 651; *Burke* v. *Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; *Benton* v. *Martin,* 52 N. Y. 570; *Garfield National Bank* v. *Colwell,* 57 Hun, 169, 10 N. Y. Supp. 864; *Simmons* v.

*Thompson,* 29 App. Div. 559, 51 N. Y. Supp. 1018; *McFarland* v. *Sikes,* 54 Conn. 250, 1 Am. St. Rep. 111, 7 Atl. 408; *Juillard* v. *Chaffee,* 92 N. Y. 529; *Schindler* v. *Muhlheiser,* 45 Conn. 153.

In the case of *Tacoma Mill Co.* v. *Sherwood,* 11 Wash. 492, 39 Pac. 977, cited by appellant in opposition to the principle laid down in the foregoing cases, it appeared that there was a consideration for the note in question, and the court said: "The law will not permit the maker of a note, where there is a consideration, to show an oral agreement that he was not to be liable at all on the note." Appellant also cites the case of *Dolson* v. *De Ganahl,* 70 Tex. 620, 8 S. W. 321, but in that case the court said: "The note fixes the obligation of the appellant to pay, and his pleadings leave open to him only the defense that it was executed without consideration. Evidence tending to support that defense is admissible." The court then proceeded to show that there was a valid consideration for the note.

The case of *Davy* v. *Kelley,* 66 Wis. 452, 29 N. W. 232, is also called to our attention. In that case it was held that evidence of a contemporaneous oral agreement between the parties to a note that it was not to be enforced as between them, is inadmissible. But the opinion of the court, by Mr. Justice Taylor, discloses the fact that it was finally determined that the note in suit was given upon sufficient consideration.

We are of opinion that, in view of the authorities, and in principle, the rule laid down by the New York court of appeals, in *Higgins* v. *Ridgway, supra,* is founded in sound reason, and that the court below properly followed the same.

2. Was the bank bound by the representations of its cashier that defendant should not be called upon to pay the note?

The supreme court of the United States, in *Martin* v. *Webb,* 110 U. S. 7, 3 Sup. Ct. 482, 28 L. Ed. 49, held that, although a cashier of a bank ordinarily has no power to bind the bank except in the discharge of his customary duties, and although the ordinary business of a bank does not comprehend a contract made by a cashier, without delegation of power from the board of directors, involving the payment of money not loaned

by the bank in the customary way, nevertheless it may be inferred from the general manner in which, for a period sufficiently long to establish a settled course of business, he has been suffered by the directors, without interference or inquiry, to conduct the affairs of the bank; and when, during a series of years, or in numerous business transactions, he has been permitted, in his official capacity and without objection, to pursue a particular course of conduct, it may be presumed, as between the bank and those who in good faith deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations. The matter involved was a legitimate transaction, from which the bank derived an advantage. It will be observed that the principle of estoppel *in pais* was thus invoked against the bank.

Again, the supreme court of the United States in *West St. Louis Savings Bank* v. *Shawnee County Bank,* 95 U. S. 557, 25 L. Ed. 490, said: "Ordinarily the cashier, being the ostensible executive officer of a bank, is presumed to have, in the absence of positive restrictions, all the power necessary for such an officer in the transaction of the legitimate business of banking; * * * but certainly he is not presumed to have power, by reason of his official position, to bind his bank as an accommodation indorser of his own promissory note. Such a transaction would not be within the scope of his general powers; and one who accepts an indorsement of that character, if a contest arises, must prove actual authority before he can recover. There are no presumptions in favor of such a delegation of power."

Mr. Thompson in his work on Corporations (volume 2, second edition, section 1532) says: "The principal limitation upon the powers of a cashier is that his acts must be within his ordinary duties. It cannot be assumed that he is authorized to do every act within the powers of the bank. His implied authority is limited to acts done in the usual and ordinary course of business, and cannot be extended to cover unusual and extraordinary transactions. For the transaction of such business, special authority must be conferred upon him by the directors."

In volume 1 of Morse on Banks and Banking (fourth edition, Parsons), section 167, we find this statement: "It can never be pretended that he [the cashier] has any incidental powers to bind the bank by declarations or admissions which are made beyond the scope of his duties. Thus, his statement or promise given to a person who is about to put his name as indorser upon a note which the bank has agreed to discount, to the effect that such person will not be held liable or shall not be looked to by the bank, is altogether inoperative and void as an undertaking of the bank." (See, also, 1 Bolles' Modern Law of Banking, p. 361.)

In the case of *Bank of the United States* v. *Dunn,* 6 Pet. 51, 8 L. Ed. 316, the defendant offered to prove that the cashier and president of the bank gave him to understand that if he indorsed the note in suit, he would incur no risk or responsibility. The court said: "The most decisive objection to the evidence is that the agreement was not made with those persons who have power to bind the bank in such cases. It is not the duty of the cashier and president to make such contracts, nor have they the power to bind the bank, except in the discharge of their ordinary duties."

In *Bank of the Metropolis* v. *Jones,* 8 Pet. 12, the court said: "It is unnecessary to add in this case, as was stated by the court in the case of Dunn, that the officers of the bank had no authority, as agents of the bank, to bind it by the assurances which they gave." In the *Jones Case* it appeared that the president of the plaintiff bank had assured the indorser, through the maker, that he would incur no responsibility on the note on account of the fact that certain property, which could be subjected to its payment, was very valuable.

In the case of *Thompson, as Receiver,* v. *McKee,* 5 Dak. 172, 37 N. W. 367, the facts were these: McKee went to the First National Bank of Sioux Falls to identify one Wolf, and at the request of the cashier wrote his name on the back of a draft, the cashier assuring him that he should not be liable on it, his name being wanted merely to show who identified Wolf. Mc-

Kee afterward gave his note to the bank for the amount of the draft it had cashed, with an understanding with the cashier that his liability on the note should not be greater than it was on the draft, and he subsequently renewed this note, with a similar understanding with the president and cashier. The court held that the facts constituted no defense, for the reason that the president and cashier had no authority to make any such contract. Mr. Justice Spencer, speaking for the court, said: "It has been repeatedly held by the highest judicial tribunals that officers of banks have not the power to excuse or limit the legal obligations of persons to the banks they represent, by agreeing with them that they shall not be held liable or called upon to pay the obligations which they make, either as principal debtors or accommodation makers or indorsers, and on the credit of which the bank has parted with its funds."

In the case of *Claflin* v. *Farmers' & Citizens' Bank*, 25 N. Y. 293, it was held that the general authority of the president of a bank to certify checks drawn upon it does not extend to checks drawn by himself.

The supreme judicial court of Massachusetts, in *Dedham Institution for Savings* v. *Slack*, 6 Cush. (Mass.) 408, held that the treasurer of an incorporated institution for savings has no authority, as such, and without being specially authorized thereto, to execute a release in the name of the corporation.

In *Gallery* v. *Bank*, 41 Mich. 169, 32 Am. Rep. 149, 2 N. W. 193, it was shown that one Irwin was president of the bank and also of a railway company. With other directors of the railway company he made a note to the bank. Evidence was introduced tending to prove that the note was not to be paid by the makers thereof, but only from the assets or funds of the railroad company. It was claimed that Irwin, as president of the bank, consented to an arrangement by which the debt was assumed by a third person and the makers released. The court said: "Even had he [Irwin] assumed to act for and represent the bank, being liable as maker and indorser, he could not consent to his own release and that of his comakers and bind the

bank thereby.  *  *  *  That he could not act in such a double
and antagonistic capacity is well settled in this state." (See,
also, *Payne* v. *Commercial Bank,* 6 Smedes & M. (Miss.) 24;
*Bank of Commerce* v. *Hart,* 37 Neb. 197, 40 Am. St. Rep. 479,
55 N. W. 631, 20 L. R. A. 780; *Bank* v. *Reed,* 1 Watts & S.
(Pa.) 101; *Hodge's Exr.* v. *First Nat. Bank,* 22 Gratt. (Va.)
51; *Cochecho Nat. Bank* v. *Haskell,* 51 N. H. 116, 12 Am. Rep.
68; *Daviess Co. Savings Assn.* v. *Sailor,* 63 Mo. 24; *Sandy River
Bank* v. *Merchants' etc. Bank,* 1 Biss. 146, Fed. Cas. No. 12,309;
*Ellis* v. *First Nat. Bank,* 22 R. I. 565, 48 Atl. 936; *German Savings Bank* v. *Des Moines National Bank,* 122 Iowa, 737, 98 N.
W. 606; *Mendel* v. *Boyd,* 71 Neb. 657, 99 N. W. 493.)

The testimony shows that the transaction in controversy was
an isolated one. The defendant testified that he had previously
had no dealings of the kind with Thurston. No question of
estoppel is involved. Hauck testified that he, as president, had
never authorized the cashier to make the arrangement testified
to by the defendant, and there is no evidence that the board of
directors did so. We conclude, therefore, that the promise of
Thurston was, on its face, beyond the scope of his authority,
and that the defendant was chargeable with notice thereof. We
hold that the cashier of a bank, by virtue of his office, has no
authority to make such an arrangement as that testified to by
the defendant, and that whoever accepts such an agreement
and acts upon it does so at his peril.

3. But it is contended that the note was in fact given without consideration. If so, this was an available defense against
the payee, regardless of whether the cashier had authority to
promise that defendant should not be called upon to pay.

The testimony shows conclusively that the plaintiff in fact
parted with full consideration for the note, and, to our minds,
the evidence of the defendant himself proves that a valid consideration passed, and that he was aware of the fact that certain assets of the bank were to be withdrawn and his note
substituted in place thereof at the time he executed and delivered the same. How otherwise can his statement that "the

bank would not want to have Thurston's paper in there" be
explained? The only reasonable construction to be placed upon
his testimony is that he knew that Thurston was personally
desirous of withdrawing his paper. But it is immaterial what
phraseology was employed. The very fact that Thurston pro-
posed to withdraw his own paper was notice to the defendant
that he was acting for himself.

And there are other reasons why the judgment cannot stand.
The whole transaction shows on its face that Thurston was in
fact acting for himself, and not for the bank, and that the de-
fendant either knew the fact, or should have known it. Thurs-
ton was engaged in a palpable attempt to defraud the bank of
which he was cashier, and the defendant by his acts made it
possible for him to consummate the fraud. In the case of *Pauly
v. O'Brien* (C. C.), 69 Fed. 460, Judge Ross said: "It is said
for the defendant that the note sued on was without considera-
tion. Not so, according to the agreed statement of facts, for
it is there stated that it was executed in place of and to take
up the note of Naylor, then represented by the bank officers to
be past due and to be secured by collaterals which were believed
to be ample to pay it, and which they represented the bank
wanted to get 'out of the past-due notes,' and which together
with the collaterals were to stand as collateral to the note ex-
ecuted by the defendant upon the execution of which the Naylor
note was entered as paid on the books of the bank, and the de-
fendant's note was entered thereon 'as a discount for its face.'
It thus appeared that the defendant executed his first note,
subsequently renewing it from time to time, and ultimately by
the note in suit, for the purpose of having it take the place of
the Naylor note, which, together with the collaterals, 'were to
be collateral to the note' given by him. If, however, this was
not really the case, but that, in truth, the transaction was a
mere trick to make it appear to the government and to the
creditors and stockholders of the bank that it had a valuable
note when in fact it did not have one, the result must be the
same; for, when parties employ legal instruments of an oblig-

atory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequences of his fraudulent act. It would require more credulity than I possess to believe that the defendant, when his brother, who was the bookkeeper of the bank, came to him with the proposition of its vice-president, in its every suggestion and essence deceptive and fraudulent, did not know its true character and purpose. So far as appears, Naylor was a total stranger to him. Why should he execute his note to take up the note of Naylor? What moved him to do it, except to enable the officers of the bank to supplant the overdue note of Naylor with a live note, which he now insists was without consideration and purely voluntary, but which enabled the bank officers to make a deceptive, and therefore fraudulent, showing of assets?"

In the case of *Allen* v. *First Nat. Bank,* 127 Pa. 51, 14 Am. St. Rep. 829, 17 Atl. 886, the facts were these: The bank brought an action to recover the sum of $5,000 alleged to be due on a promissory note. The defendant offered to prove that Beecher, the cashier of the bank, came to him at the postoffice and said that the bank was carrying for his firm of Beecher & Copeland a quantity of oil certificates, in excess of what they were permitted to carry for one firm under the laws of the United States, and that the bank desired to have the oil carried in the name of other parties, so as to make an appearance of compliance with the law, and for that purpose he asked the defendant to become the maker of a note for $5,000, to be secured by 5,000 barrels of oil that the bank was carrying for Beecher & Copeland; and, in compliance with this request, Allen executed the note without other consideration, and with the express agreement that he should not be held liable thereon. The trial court directed a verdict for the plaintiff bank. On appeal the su-

preme court said: ''Assuming all the facts covered by the offers to have been proved, they would not have amounted to a defense as against the bank. The whole confusion in the case grows out of the fact that Mr. Beecher was at the same time a member of the firm of Beecher & Copeland and cashier of the bank. The effort here is to make the bank responsible, not merely for matters done in the scope of his duties as cashier, or by authority of the bank, but also for his acts and declarations done or made in the pursuit of his private business. His interview with the defendant at the postoffice can only be taken as an effort on his part to procure accommodation paper to the amount of $5,000 to take up a like amount of his firm's paper at the bank. In some way his firm had obtained a larger line of discount at the bank than is permitted by the general banking law; the bank examiner was expected soon, and it became necessary for defendant's firm to retire some of its paper. . It was equally necessary, perhaps, for the bank; and (the defendant as) its cashier must have been fully aware of the importance of getting the account of his own firm in proper condition. He succeeded in procuring from the defendant his note for $5,000 to replace a like amount of his firm's paper, with an assurance that the defendant should never be called upon to pay it.''

The case of *Simmons* v. *Thompson*, 29 App. Div. 559, 51 N. Y. Supp. 1018, is called to our attention by the learned counsel for the respondent. In that case, however, the court held that the vice-president of the Loan and Trust Company who induced the defendant to make the note in suit, by representations that he should not be held liable upon it, was apparently clothed with authority in the premises; the facts show that he was actually engaged in carrying forward a transaction which was beneficial to his principal, and also that the corporation had ratified his acts. The question of consideration as arising from the detriment to the trust company which advanced money on the note is not mentioned in the majority opinion, but is quite clearly shown by the dissenting opinion of Mr. Justice Ingra-

ham.   Aside from this, we do not regard the doctrine laid down
by the court in that case as a healthy one.   It loses sight of the
rights of innocent stockholders and depositors in banks alto-
gether, and relieves a party who, by affirmative action, has
brought about the unfortunate condition in which he finds him-
self.

But it is contended that the knowledge possessed by Thurs-
ton is to be imputed to the bank, and therefore the latter had
notice that Forsyth received nothing for the note.   The correct
rule on this subject is, we think, laid down in *Innerarity* v.
*Merchants' Nat. Bank,* 139 Mass. 332, 52 Am. Rep. 710, 1 N. E.
282, as follows: "While the knowledge of an agent is ordinarily
to be imputed to the principal, it would appear now to be well
established that there is an exception to the construction or
imputation of notice from the agent to the principal in case of
such conduct by the agent as raises a clear presumption that he
would not communicate the fact in controversy, as where the
communication of such a fact would necessarily prevent the
consummation of a fraudulent scheme which the agent was en-
gaged in perpetrating.   *   *   *   A bank   *   *   *   can only
act through agents, and it is generally true that, if a director
who has knowledge of the fraud or illegality of the transaction
acts for the bank, as in discounting a note, his act is that of the
bank, and it is affected by his knowledge.   *   *   *   But this
principle can have no application where the director of the bank
is the party himself contracting with it.   In such case the posi-
tion he assumes conflicts entirely with the idea that he repre-
sents the interests of the bank.   To hold otherwise might
sanction gross frauds, by imputing to the bank a knowledge those
properly representing it could not have possessed."   (See, also,
*State Savings Bank of Ionia* v. *Montgomery,* 126 Mich. 327, 85
N. W. 879.)

In the case at bar we have only to consider the effect of the
testimony to determine that the defendant is not in a position
to dispute his liability on this note.   It would be a most dan-
gerous holding if we should decide, upon the facts disclosed by

the record, that he could do so.     We find no evidence that he had any idea or purpose of accommodating the bank.     It does not appear that Thurston was present at the trial.     It does appear, however, that he used the funds of the bank from time to time, that he resigned his position there, and that it was necessary to prove his handwriting by another person.     The whole record seems to show that his management of the bank was at least open to criticism, and it is not a violent conclusion, perhaps, that he was not available as a witness.     The defendant was his partner at the time the note was given, and had his office in the rear of the bank.     Upon being requested to sign a note for $1,500, on account of the fact that his (Thurston's) paper in the bank would not look well, he did so without inquiry as to the amount of such paper which it was proposed to take up, and without asking what disposition was to be made of the balance, if any, of the proceeds of the note.     He thus made it possible for Thurston, not only to take up two of his own notes for $200 each, which were assets of the bank, but to also draw out a large amount in cash.     It seems to us that the request of Thurston bore on its face conclusive evidence that some fraud was projected.     The defendant knew that his note was to pass through the regular channels of the bank.     He saw Thurston hand it to the teller.     It is a penal offense in this state to knowingly make false entries in the books of a bank, or to knowingly subscribe or exhibit false papers with intent to deceive the state bank examiner.     (Revised Codes, sec. 4001.)     The defendant was chargeable with knowledge of this statute, and with notice that it was Thurston's purpose to violate it.     How can it be possible for a man of ordinary intelligence to suppose that a request for an accommodation note for a large amount, made by a cashier, is intended to be for the benefit of the bank?     Notes are ordinarily given to a bank for the purpose of borrowing money therefrom.     We can conceive of no circumstances under which a bank can require an accommodation note on its own account for any legitimate purpose.     It seems to us that the mere request carries notice that the purpose for which such

paper is intended to be used is not a lawful one. What legitimate end could possibly be served by carrying in a bank commercial paper which was not to be paid under any circumstances? Obviously none. The only possible design would be to deceive some one, either the stockholders, the depositors, or the bank examiner, who acts for them in the name of the state. It is only an innocent party who may take advantage of such a defense as that attempted to be interposed in this case, when other innocent parties have suffered. The defendant cannot claim to occupy such position. The stockholders in the plaintiff bank have, through his connivance, suffered a loss of $1,500, and a case might arise, as it often does, where the loss would fall upon the still more innocent depositors. We cannot give our assent to the proposition, whatever may have been the holdings of other courts upon the subject, that a party who has been guilty of such gross negligence as has the defendant in this case can escape liability on account of technical rules of law, and compel other persons to stand the loss caused by his total lack of care. The presumption that Thurston informed the bank, through its proper officers, of his fraudulent intention to withdraw its funds for his own personal use, through the medium of defendant's note, is fully removed by the reflection that, had he done so, his purpose would have been defeated.

The order and judgment appealed from are reversed, and the cause is remanded to the district court of Fergus county, with directions to enter judgment in favor of the plaintiff as prayed for.

*Reversed and remanded.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.