SUPREME TENT KNIGHTS OF THE MACCABEES OF THE WORLD *v.* PORT HURON SAVINGS BANK.

137　627
s147　552

1. BANKS—DRAFTS.

In an action against a bank to recover the amount of a certain draft alleged to have been wrongfully issued by plaintiff's finance keeper, who was also cashier of defendant bank, and not credited to plaintiff, evidence examined and *held* that the court should have instructed that the amount of certain other drafts in plaintiff's favor should be deducted from any claim of the plaintiff against defendant on the first draft.

2. SAME—OFFICERS—MISAPPROPRIATION OF FUNDS.

Where the president and cashier of defendant bank knew that a certain draft was procured by its assistant cashier with plaintiff's funds, and that he had no right to use any of such funds to pay his individual debt, the question as to whether defendant was a bona fide holder of such draft in an action to recover the proceeds thereof was immaterial, since, if it

was used to pay the individual indebtedness of the assistant cashier to defendant, and not to reimburse defendant for money used by him to pay warrants or other items properly charged against plaintiff, defendant was liable.

3. SAME—EVIDENCE—RES GESTÆ.

Where defendant's cashier, who was also plaintiff's finance keeper, after having drawn certain drafts on defendant's foreign correspondents, was questioned by defendant's officers concerning the same, and thereupon stated that the drafts had been drawn to cover proper charges against plaintiff, and that a draft from plaintiff's funds would be deposited to cover the same, which the bank subsequently received, such statement by the cashier was admissible as res gestæ in an action by plaintiff against the bank to recover the proceeds of the draft deposited on the ground that such proceeds had been misappropriated by such assistant cashier and finance keeper.

4. SAME—EVIDENCE — ADMISSIONS — STATEMENTS IN FURTHERANCE OF INTEREST.

Since plaintiff claimed that the cashier was using the draft for the purpose of concealing a deficit in his accounts as assistant cashier, such statement was a statement made in his own interest, and therefore was inadmissible to establish a claim by defendant against plaintiff.

Error to St. Clair; Law, J. Submitted April 14, 1904. (Docket No. 60.) Decided October 4, 1904.

Assumpsit by the Supreme Tent Knights of the Maccabees of the World against the Port Huron Savings Bank for money had and received. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error. Reversed.

*Stevens & Graham* (*John B. McIlwain*, of counsel), for appellant.

*Lincoln Avery* and *P. H. Phillips* (*DeVere Hall* and *D. D. Aitken*, general counsel, of counsel), for appellee.

MOORE, C. J. This is an action of assumpsit. It was tried before a jury. The circuit judge directed a verdict

in favor of the plaintiff for $56,223. The case is brought here by writ of error.

The plaintiff is a fraternal beneficiary association. From 1883 until 1901 Charles D. Thompson was its finance keeper. During the period from 1883 until November 30, 1900, he was assistant cashier of the defendant. Until the transactions arose involved in this case, Mr. Thompson had the confidence and esteem of the officers of the fraternal society, and also of the bank. On the morning of December 1, 1900, a draft for $50,000 on a New York bank was delivered by Mr. Thompson to the defendant under circumstances which will be stated later, upon which draft defendant received $50,000.

It is the claim of plaintiff that the obtaining the funds for this draft by Mr. Thompson created a deficit of $50,-000 in his account as plaintiff's finance keeper and that the draft balanced his irregularities as assistant cashier of the bank. On the other hand, it is claimed that the draft simply represented cash or its equivalent which was furnished by defendant to the plaintiff.

The record discloses that on Thanksgiving Day, November 29, 1900, Mr. Harrington, cashier of the bank, discovered Mr. Thompson had detached from the New York draft book of the bank a draft without filling in the stub. Mr. Harrington immediately wired the New York bank an inquiry and a direction to withhold payment until further advised. After the close of business on November 30th, Mr. Harrington discovered Mr. Thompson had drawn a New York draft for $15,000, which did not appear upon the business of the day. He at once sent for Mr. Thompson, and questioned him about the drafts. As to the first one, he said it was for $20,000, and had been sent to the Bankers' National Bank of Chicago, one of the depositories of plaintiff, and placed to the credit of the Maccabees, and that his failure to fill up the stub was an inadvertence. As to the $15,000 draft he said it went to the Commercial Bank of Port Huron, another depository of the plaintiff, and was placed to the credit of the plain-

tiff. This conversation was in the presence of Mr. Mc-Morran, the president of the bank. As before stated, on the morning of December 1st the draft for $50,000 was given to the defendant bank, Mr. Thompson saying it covered the two drafts mentioned, and also $15,000 cash of defendants, which he had used for Maccabee purposes, warrants of the plaintiff, and other items properly paid in its behalf. The cash was gone over at this time, and it is claimed the statement of Mr. Thompson was verified. After this was done, the New York bank was telegraphed by Mr. Harrington to honor the two drafts. They were paid, and placed to the credit of the plaintiff. The defendant bank afterwards realized $50,000 on the draft delivered to it by Mr. Thompson.

If this was all there was of the transaction relating to the two drafts, it would seem to be very unjust for the plaintiff to repudiate the act of its finance keeper, and at the same time get the benefit of credits amounting to the sum of $35,000 of the money of the defendant, which resulted from the transaction. It, however, is claimed by the plaintiff that these drafts were necessary to make good a deficit which existed on the part of the bank in its transaction through Mr. Thompson with the plaintiff. In support of this claim counsel have prepared a somewhat detailed statement of credits and debits between the plaintiff and the bank commencing with an item of $20,000 March 12, 1900, by which it is made to appear that it was necessary to include the two drafts to balance the account on November 30, 1900. The trouble with this statement of account is it does not commence early enough. If the commencement of the account had been January 12, 1898, it would show that up to November 30th defendant had received from plaintiff $331,400, and had paid out a like amount, without including either of the drafts in controversy. Taking the record as we find it, we think it clear the circuit judge should have said to the jury that the amount of the two drafts should be deducted from any claim the plaintiff might have against defendant.

This leaves the remaining $15,000 to be considered. Before entering upon that discussion, we think it well to consider some legal questions presented by counsel. Stated briefly, it is the claim of plaintiff that defendant, in order to defend against the claim of plaintiff, must show it was a bona fide holder of the $50,000 draft. On the part of the defendant it is claimed plaintiff must show mala fides on the part of defendant before it can sustain its action. In our view of the case, neither of these questions is involved. There can be no reasonable doubt Mr. McMorran, the president, and Mr. Harrington, the cashier, of the bank, knew the $50,000 draft was procured with the funds of plaintiff. They also knew Mr. Thompson could not properly use any of those funds to pay his individual debt. In our judgment, the question as relating to the remaining $15,000 is a simple one of fact, to wit, was it the individual debt of Mr. Thompson which the money paid, as claimed by plaintiff, or was it to reimburse the bank for money used by Thompson to pay the warrants or other items properly chargeable against the plaintiff, as claimed by defendant. This was a question to be submitted to the jury upon the testimony under proper instructions.

When the plaintiff traced $50,000 of its funds into the hands of the defendant, as it did by showing defendant received a draft bought with its funds, of which defendant's officers had knowledge, and obtained the money thereon, it made a prima facie case. It then became the duty of the defendant to show plaintiff had received full value for this amount. We have already seen that, as the record is presented, it did account for $35,000 of this amount.

It is claimed by plaintiff that Mr. Thompson's statement to the officers of the bank at the time of the transaction is not competent. Defendant claims it is competent, not only as part of the res gestæ, but also as an admission which should bind the bank that the $15,000 was used to pay the warrants of the plaintiff and other proper charges against it. We have no doubt the conversation was admissible as part of the res gestæ. Whether it was

admissible as tending to establish a claim against plaintiff presents a much more difficult question. Upon the proposition that it is admissible for that purpose counsel cite *Oakland County Sav. Bank* v. *State Bank of Carson City*, 113 Mich. 284 (71 N. W. 453, 67 Am. St. Rep. 463), *State Sav. Bank of Ionia* v. *Montgomery*, 126 Mich. 327 (85 N. W. 879), and many other authorities. If the only persons interested in the transaction were the plaintiff and defendant, doubtless the contention of counsel is sustained by these authorities. But if the claim of plaintiff is true that Mr. Thompson was using this draft for the purpose of covering up a deficit in his account with the plaintiff, then he is a party in interest, and his statements would be made in his own interest. In *State Sav. Bank of Ionia* v. *Montgomery*, supra, after a detailed analysis of several authorities and the citation of a great many others, it was held that the knowledge of the agent would not be imputable to the principal where in the particular transaction his interests were adverse to the interests of the principal. The same principle is involved here. Mr. Thompson may have been actuated by self-interest in making these statements, and for that reason they should not bind the plaintiff.

The other questions have been considered, but we do not deem it necessary to discuss them.

For the reasons stated, the judgment is reversed, and a new trial ordered.

Carpenter, Montgomery, and Hooker, JJ., concurred. Grant, J., did not sit.