### MINER *v.* HUSTED.

1. SPECIFIC PERFORMANCE — CONDITIONAL SALES — PATENTS — LICENSES—CONTRACTS.

Complainant, the vendor of all the stock of the Allmetal Manufacturing Company, filed a bill for specific enforcement of the contract, for an accounting and other relief, making parties defendant the said corporation and one H., the purchaser of complainant's interests. In the agreement of sale and purchase the parties stipulated that the stock and a certain contract of license to manufacture a brooder stove belonging to the corporation be deposited with and held in trust by a trust company to secure performance of the conditions of the sale, and payment of the purchase price. By its provisions complainant agreed to satisfy all claims against the corporation and reserved the right to all accounts receivable, also binding the purchaser to pay to complainant vendor the same royalties fixed in the license contract between the corporation and said patent holder, and guaranteed the sale of a minimum quantity of stoves. The complainant was bound not to engage in the business of selling other similar products. Among the provisions the contract also stipulated that defendant stockholders should pay to the seller, as damages for the breach of the contract, in the event of such

breach, the sum of five dollars per stove sold, from which amount, however, was to be deducted the royalties provided for. *Held*, that complainant might specifically enforce the obligation of the vendee notwithstanding such provisions for a penalty, and that a corporation subsequently organized by H. to manufacture the same product under royalties of equal amount fixed by the license contract, to which the license was also assigned, was bound by the terms thereof, by reason of the notice or knowledge possessed by H., who was one of its principal officers and directors.

2. SAME—EQUITY—PENALTY.

The inclusion in a royalty contract relating to the assignment of a license to sell a patented product, of a provision for the payment of $5 for each article sold in violation of the agreement was a penalty, but the same did not interfere with the authority of the court to grant the equitable remedy of specific performance.

3. SAME—AGENCY—CORPORATIONS—NOTICE.

It is a general rule that a corporation is bound by the knowledge of its officers and agents, as in other cases of the relation of principal and agent, although an exception is in certain cases recognized when the position or interest of the official is clearly adverse to that of the corporation.

4. SAME—TRUST MORTGAGE.

The rights of a creditor and mortgagee of the last mentioned corporation under a trust mortgage of its assets were also subordinate to the rights of complainant and his interest free of any incumbrance or trust arising out of such attempted transfer.

Appeal from Kent; McDonald, J. Submitted January 4, 1916. (Docket No. 6.) Decided March 31, 1916.

Bill by Frank E. Miner against Nina Husted, executrix of the last will and testament of N. P. Sylvester Husted, and others, for specific performance of a certain contract, for an accounting, and for other relief. From a decree for defendants, complainant appeals. Reversed.

*Hatch, McAllister & Raymond,* for complainants.

*Rolland J. Cleland* (*Myron H. Walker,* of counsel), for defendants.

STONE, C. J.   The bill of complaint in this case was filed to enforce the performance of a certain contract, for an accounting, and for other relief.

The Allmetal Manufacturing Company, one of the defendants herein, is a corporation organized under the laws of this State.   On the 22d day of October, 1912, the company was the owner of certain property situated in the city of Grand Rapids, including machinery, raw and manufactured materials, stationery, and office equipment, and also a certain written contract, dated June 8, 1912, with one J. E. Kresky, hereinafter called the Kresky contract.   The said Kresky contract was an agreement between J. E. Kresky of Petaluma, Cal., and the Allmetal Manufacturing Company, whereby that company was granted the exclusive agency for a term of ten years for the sale, in that portion of the United States lying east of the Rocky Mountains, of the brooder stoves known as the "Pride of Petaluma," also brooder burners and other accessories of said stoves, which stoves, brooders, and accessories were manufactured by said Kresky under patents held by him.   Said contract contained an option for the purchase by said company, within two years after its date, of the exclusive right to manufacture and sell said articles in said territory on payment of $5,000.   Said contract specified the prices at which said articles were to be sold by said Kresky to the Allmetal Manufacturing Company.

On October 22, 1912, complainant was the holder of 800 shares of the capital stock of said Allmetal Manufacturing Company, being the entire capital stock then issued.   Seven hundred shares of the authorized capital stock had not been issued.   On that date, he and N. P.

Sylvester Husted entered into a written contract, which contract will hereafter be referred to as Exhibit B, and was in the words and figures following:

"This agreement, made this 22d day of October, A. D. 1912, by and between Frank E. Miner of East Grand Rapids, Michigan, first party, and N. P. Sylvester Husted, of Grandville, Michigan, second party, witnesseth:

"Whereas, said first party is the holder of 800 shares of the capital stock of Allmetal Manufacturing Company, a corporation organized under the laws of the State of Michigan, and doing business at the city of Grand Rapids, in said State, and owning certain physical property situated in said city of Grand Rapids, including machinery, raw materials, manufactured materials, stationery and office equipment, and a certain contract in writing dated the 8th day of June, 1912, whereby one J. E. Kresky, of Petaluma, California, granted to Allmetal Manufacturing Company an exclusive sales agency under a certain patent or patents covering an invention known as 'Kresky Rotary Burner' for use in brooder stoves or otherwise, in that portion of the United States of America lying east of the Rocky Mountains, for the term of ten years from the date of said contract, and thereafter granted to said Allmetal Manufacturing Company the right to manufacture the same under said patents;

"And whereas, 700 shares of the authorized capital stock of said Allmetal Manufacturing Company have never been issued;

"And whereas, said first party has agreed to sell all of said capital stock of said Allmetal Manufacturing Company so held by him to said second party and said second party has agreed to buy said capital stock so held by first party, and to pay to said first party therefor certain sums of money hereinafter specified at the times and in the manner hereinafter specified;

"And whereas, it is mutually agreed between the parties hereto that said capital stock, together with said contract between J. E. Kresky and said Allmetal Manufacturing Company shall be held by the Michigan Trust Company, of said city of Grand Rapids, Michi-

gan, as trustee, for the purpose of securing the fulfillment, and until the final fulfillment of all the covenants, agreements and conditions hereinafter contained by said second party to be kept and performed:

"Now, therefore, it is mutually agreed between the parties hereto as follows:

"*First*. For the considerations of $887.75 to be paid forthwith by party of the second part, and those hereinafter mentioned, party of the first part hereby sells, assigns, and sets over to party of the second part, 800 shares of stock in Allmetal Manufacturing Company, being the entire capital stock now issued; and does agree personally to pay forthwith all claims of every nature now existing against said corporation, except claim of Stewart-Davis Advertising Agency; and party of the second part agrees that all accounts receivable of said corporation now existing belong to party of the first part.

"*Second*. Said party of the second part guarantees that said Allmetal Manufacturing Company shall in all respects fulfill and carry out the terms of said contract between said J. E. Kresky and said Allmetal Manufacturing Company, and that in case said Allmetal Manufacturing Company shall avail itself of the option contained in said contract to purchase of said J. E. Kresky the exclusive right to manufacture and sell the articles mentioned in said contract throughout the territory specified therein, said right shall be held by said the Michigan Trust Company in trust in lieu of said contract between said J. E. Kresky and said Allmetal Manufacturing Company in like manner as said shares of stock as hereinafter stated.

"*Third*. As further consideration for the sale by said first party to said second party of said shares of the capital stock of said Allmetal Manufacturing Company, said second party agrees to pay to said first party, royalties on the sale of all stoves sold, or manufactured and sold under said contract with said Kresky as follows: Three dollars on each stove until 2,000 stoves are sold; two dollars royalty on each stove sold on the next 4,000; one dollar royalty on each stove sold above 6,000; said royalties to be paid during the life of said contract with said Kresky. If second party takes advantage of said option contained in said Kresky

contract, first party is to receive such royalties during the life of the patents covering said stove and burner mentioned in said Kresky contract; said royalties are to be paid to the first party at the end of each month for stoves sold during the month, excepting that during the months of January, February, March and April of each year, said royalties are to be paid at the end of each week. Second party shall furnish first party a report with each settlement showing the serial number of all stoves sold, to whom sold, and where sold, and first party shall have the right to examine the books of second party at any time during business hours, for the purpose of checking such reports.

"*Fourth.* Second party agrees to use due diligence and his best efforts to promote the business of selling brooder stoves under said Kresky contract, and guarantees to first party royalties on at least 275 stoves during the first seven months following the date of this agreement, and on at least 800 stoves each year thereafter during the life of this agreement. It is also agreed that if second party, or said Allmetal Manufacturing Company, should engage in the business of manufacturing or selling other stoves, or stoves under any other contract than those manufactured or sold under said Kresky contract, the same conditions as to royalties and the payment thereof that apply to said Kresky stove in this contract shall also apply to said other stoves, and be paid to said first party.

"*Fifth.* First party agrees to co-operate in all reasonable ways toward helping promote the best interests of second party in the carrying on of said business, and that he will not during the life of this agreement, either directly or indirectly, or as principal or employee, or otherwise, engage in the business within the United States or Canada, of selling stoves or burners of any type or kind that will enter into competition with said second party. First party also agrees to turn over to second party all inquiries now or hereafter received by him or Allmetal Manufacturing Company in connection with the brooder stove business, or other business of said Allmetal Manufacturing Company.

"*Sixth.* In case any more of the capital stock of said Allmetal Manufacturing Company shall be issued at

any time hereafter, said stock shall be held by the Michigan Trust Company as trustee, as additional security for the performance by said second party of the covenants, agreements and conditions herein contained by him to be performed.

"*Seventh.* All or any of the stock so held by said the Michigan Trust Company as trustee may be at any time transferred by the person or persons for whom it is so held by said trustee, subject to the provisions of this contract, and when so transferred it shall continue to be held by said trustee until this contract shall be fulfilled.

"*Eighth.* Said the Michigan Trust Company shall hold said stock in trust for the purpose of securing the performance of this agreement by party of the second part, but nothing herein contained shall be taken as preventing party of the second part or his assigns from voting said stock in the business of said corporation, while this agreement remains in force.

"*Ninth.* In case said second party shall at any time fail to perform all or any of the covenants, agreements and conditions herein contained to be by him kept and performed, said the Michigan Trust Company shall immediately on such failure, transfer and deliver said stock so held by it in trust and said Kresky contract, and, in case it shall hold the exclusive right to manufacture and sell the articles described in said Kresky contract under a grant or conveyance given in consequence of the election of said Allmetal Manufacturing Company to purchase said exclusive right under the option clause contained in said Kresky contract, then said grant or conveyance to said first party to be held and enjoyed by him as his own property, absolutely and forever, and this contract shall thereupon be terminated. Second party shall pay to first party as damages for the breach of this agreement, five dollars on each and every stove sold up to the time of such breach, less the royalty paid to first party, and should said second party thereafter engage in the business of selling any other stove than the above mentioned in said Kresky contract, second party shall pay to first party the same royalty on such stoves as in this contract provided.

"*Tenth.* After the full completion and performance of this contract by said second party in all things on his part, said stock, Kresky contract and said grant or conveyance of exclusive right to manufacture the articles described in said Kresky contract to said second party, to be held and enjoyed by him absolutely and forever.

"*Eleventh.* The expenses of the trust hereby created shall be paid by second party.

"*Twelfth.* Any grant or conveyance of the right to manufacture and sell the articles mentioned in the Kresky contract which may be executed in pursuance of the option contained in said contract shall be taken in the name of Allmetal Manufacturing Company.

"*Thirteenth.* It is agreed that this contract shall be binding upon the heirs, executors, administrators and assigns of both of the parties hereto.

"In witness whereof, the parties hereunto have set their hands and seals, the day and year first above written.

[Signed]          "FRANK E. MINER.          [L. S.]
                  "N. P. SYLVESTER HUSTED. [L. S.]"

"The undersigned does hereby accept the trust created by the foregoing instrument under the conditions therein named and does acknowledge receipt of certificates for eight hundred (800) shares of the capital stock of Allmetal Manufacturing Company therein mentioned, and of contract between J. E. Kresky and Allmetal Manufacturing Company dated June 8, 1912.

"Dated October 23, 1912.
                  "THE MICHIGAN TRUST COMPANY,
                      "By [Signed] F. A. GORHAM,
                                  "Vice President."

From the undisputed evidence in the case, it appears that Exhibit B was made after mature deliberation and negotiations carried on between the complainant and Husted for a number of weeks. Both parties were represented by counsel.

On October 23, 1912, after the contract, Exhibit B, had been executed, complainant deposited the 800 shares of the capital stock of the Allmetal Manufacturing Company mentioned in said contract, together

with the Kresky contract, with the Michigan Trust Company, trustee, and that company accepted the trust created in said Exhibit B, and acknowledged the receipt of the certificates for said 800 shares of stock and said Kresky contract.

We think it sufficiently appeared from the evidence that, because of lack of capital, the Allmetal Manufacturing Company was unable to continue business for any considerable time, and efforts which were made by said Husted to interest capital in said company were not successful; and on November 21, 1912, the Simplex Brooder Stove Company was incorporated, under Act No. 232, Pub. Acts 1903 (2 Comp. Laws 1915, § 9017 *et seq.*), for the purpose of the manufacture, purchase, and sale of poultry and appliances, and articles of metal of all kinds. The organizers and stockholders were N. P. Sylvester Husted; Nora Carr, his mother; Nina Husted, his wife; and Nora M. Husted, his sister. The directors elected on the same day were Nora Carr, N. P. Sylvester Husted, and Nora M. Husted. Nora Carr was president, Nora M. Husted was secretary, and N. P. Sylvester Husted was vice president, treasurer, and general manager. He had full management of the business of both the Allmetal Manufacturing Company and the Simplex Brooder Stove Company.

All the stockholders of the Allmetal Manufacturing Company were N. P. Sylvester Husted, Nora M. Husted, and Nina Husted, the last two named persons having received one share each of the capital stock from N. P. Sylvester Husted. Said N. P. Sylvester Husted held the rest of the stock. These same persons composed the board of directors of that company. That stock is all in the hands of the Michigan Trust Company, trustee under complainant's contract with Husted. At a meeting of the directors of Allmetal Manu-

191 Mich.—3.

facturing Company, held on November 21, 1912, N. P. Sylvester Husted was elected president, Nora M. Husted vice president, and Nina Husted secretary and treasurer.

At the first meeting of the stockholders of the Simplex Brooder Stove Company, held November 21, 1912, a resolution was adopted in and by which that company offered that in case the Allmetal Manufacturing Company would grant to the Simplex Brooder Stove Company the sale of stoves in the territory lying east of the Rocky Mountains, which stoves were then being manufactured by the Allmetal Manufacturing Company or Kresky, under patents held by him, the Simplex Brooder Stove Company would use its best endeavors to promote the sale of said stoves throughout said territory, and would pay to the Allmetal Manufacturing Company royalties on each stove sold by it as follows: Three dollars on each stove until 2,000 stoves were sold.; $2 on each stove on the next 4,000 sold; and $1 on each stove thereafter sold. It will be noted that these are the same royalties which Husted agreed to pay complainant in contract Exhibit B. N. P. Sylvester Husted was present at the meeting at which this resolution was adopted. In pursuance of the resolution, an agreement was entered into on November 21, 1912, between the Allmetal Manufacturing Company and the Simplex Brooder Stove Company by the terms of which the Allmetal Manufacturing Company granted to the said Simplex Brooder Stove Company the right to sell stoves, for which right the latter company agreed to pay to the Allmetal Manufacturing Company the royalties specified in the resolution above mentioned. In said agreement the Allmetal Manufacturing Company granted to the Simplex Company the right to exercise the option to purchase the exclusive right to manufacture and sell said articles contained in the Kresky contract.

January 15, 1913, a resolution was adopted at a meeting of the Simplex Company authorizing that company to enter into an agreement with the Allmetal Manufacturing Company by the terms of which the latter company should assign to the Simplex Company the exclusive right to manufacture and sell under the Kresky contract and said Allmetal Manufacturing Company, and the Simplex Company should agree to pay to the Allmetal Manufacturing Company the sum of $1,000 in stock, and the same royalties which were specified in the resolutions first above mentioned. N. P. Sylvester Husted was present at the meeting at which this resolution was adopted.

February 24, 1913, Kresky, in fulfillment of the option contained in his agreement with the Allmetal Manufacturing Company, and for and in consideration of the sum of $5,000 in hand paid by the Allmetal Manufacturing Company, sold and assigned to the Allmetal Manufacturing Company, its assigns and successors, the exclusive right to manufacture and sell stoves under letters patent issued to him.

The consideration for this assignment was furnished by the Simplex Brooder Stove Company in the form of a check, drawn on the Commercial Savings Bank of Grand Rapids, payable to the order of the Allmetal Manufacturing Company. This check was indorsed to the order of J. E. Kresky by Allmetal Manufacturing Company, N. P. Husted, Manager.

On April 12, 1913, the Allmetal Manufacturing Company assigned the rights obtained from Kresky under the instrument last above mentioned to the said Simplex Brooder Stove Company. This assignment was executed by N. P. Husted as president of the Allmetal Manufacturing Company, and by Nina Husted as secretary.

The grant from Kresky to the Allmetal Manufacturing Company, executed in fulfillment of his option,

was never deposited with the Michigan Trust Company, trustee, as security for the performance of the contract between complainant and Husted, as provided for in Exhibit B.

The Allmetal Manufacturing Company proceeded for a time to manufacture stoves, and up to April 30, 1913, 924 stoves had been sold in the United States east of the Rocky Mountains, and royalties were paid therefor to complainant, amounting to $2,759.25. Since that time complainant has received no royalties. These royalties were paid by check drawn by said Simplex Brooder Stove Company, signed by N. P. Husted, General Manager (being defendant N. P. Sylvester Husted), on the Kent State Bank. They are all set forth in the record, together with the amounts. The first two of those checks were made payable directly to the complainant. The remainder of them was made payable to Allmetal Manufacturing Company, and indorsed by that company, by N. P. Husted, manager, to the complainant.

On June 13, 1913, the Simplex Brooder Stove Company gave a trust mortgage for the benefit of its creditors to the defendant William C. Hopson. On June 16, 1913, defendant Hopson took possession of the property of said Simplex Company under such mortgage. The total number of stoves sold by defendant Hopson, after he took possession as trustee under the trust mortgage to the time of hearing in the court below, was 551. No royalties had been paid on any stoves sold after April 30, 1913. At the time of the hearing royalties were unpaid on 665 stoves which had been sold after April 30, 1913. The bill was filed July 11, 1913. On February 18, 1914, defendant N. P. Sylvester Husted died, and on April 19, 1914, an order was made reviving the suit against Nina Husted, executrix of his last will and testament. On September

2, 1913, the bill was taken as confessed by the defendant Allmetal Manufacturing Company.

Upon the hearing, the court below entered a decree dismissing the bill of complaint, with costs to defendants. The complainant has appealed.

It is claimed on behalf of complainant that the following questions are involved:

"(1) February 24, 1914, when J. E. Kresky in fulfillment of the option contained in the agreement between him and the Allmetal Manufacturing Company (being Exhibit A attached to the bill), granted to the Allmetal Manufacturing Company the exclusive right to manufacture and sell stoves, and also on April 12, 1913, when the Allmetal Manufacturing Company assigned the grant from Kresky to the Simplex Brooder Stove Company, N. P. Sylvester Husted was a director and general manager of both the Allmetal Manufacturing Company and the Simplex Brooder Stove Company, and of course he had knowledge of his contract with complainant, being Exhibit B attached to the bill.

"Was his knowledge notice to the Simplex Brooder Stove Company of the terms of that contract?

"(2) Granted that through Husted's knowledge of the terms of his contract with complainant the Simplex Brooder Stove Company had notice, did that company take the assignment of the grant from Kresky to the Allmetal Manufacturing Company subject to the terms of complainant's contract with Husted, and if it did, should that company be compelled to reassign that grant to the Allmetal Manufacturing Company, and should the grant be deposited with the Michigan Trust Company, as trustee, in fulfillment of the terms of complainant's contract?

"(3) Should Hopson, the trustee under the trust mortgage given by the Simplex Brooder Stove Company, be compelled to account for and pay to complainant royalties on all stoves sold after April 30, 1913?"

It is urged on behalf of· complainant in argument that N. P. Sylvester Husted knew that his contract with complainant provided that such grant from Kresky should be taken in the name of the Allmetal Manufacturing Company and deposited with the Michigan

Trust Company, as trustee, as security for the performance of his contract with complainant; and he knew that the assignment of that right by the All-metal Manufacturing Company to the Simplex Company was in violation of his contract with complainant; that his knowledge was notice to his company of the terms and conditions of his contract, and under such circumstances said Simplex Company could acquire no rights or interests except in subordination to the right of complainant under his contract with Husted to have the Kresky grant deposited with the Michigan Trust Company, as collateral security to his contract; that knowledge of facts acquired or possessed by an officer or agent of a corporation, in the course of his employment, and in relation to matters within the scope of his authority, is notice to the corporation whether he communicates such knowledge or not; and that by weight of authority, when an officer of a corporation does an act which constitutes a fraud upon a third person, or upon another corporation of which he is also an officer, the first-mentioned corporation is chargeable with notice of the nature of the transaction, although the fraud is perpetrated for his own benefit, when he also represents the corporation in the transaction. Counsel cite many authorities in support of this proposition. Among them are the following: *Peoria Marine, etc., Ins. Co.* v. *Hall,* 12 Mich. 202, 214; *Great Western Ry. of Canada* v. *Wheeler,* 20 Mich. 419; *Stevenson* v. *City of Bay City,* 26 Mich. 44; *Detroit Motor Co.* v. *Bank,* 111 Mich. 407 (69 N. W. 726). To which may be added *Westinghouse Electric, etc., Co.* v. *Hubert,* 175 Mich. 568, 576 *et seq.* (141 N. W. 600, Am. & Eng. Ann. Cas. 1915A, 1099); 2 Pomeroy's Equity Jurisprudence, § 666; 3 Clark & Marshall on Corporations, pp. 2200, 2201; *Brobston* v. *Penniman,* 97 Ga. 527 (25 S. E. 350); *Cook* v. *Tubing & Webbing Co.,* 28 R. I. 41, 73 (65 Atl. 641, 9 L. R. A.

[N. S.] 193) ; *Benedict* v. *Arnoux*, 154 N. Y. 715, 728 (49 N. E. 326). Many other authorities are cited.

It is urged by complainant's counsel that the failure to deposit with the Michigan Trust Company, as trustee, the grant or assignment from Kresky to the Allmetal Manufacturing Company, dated February 24, 1913, was a breach of the Husted contract, and was a fraud on complainant which entitles him to the relief prayed for in the bill.

It is also urged that the Simplex Brooder Stove Company recognized complainant's rights under the Husted contract, and complainant's rights to royalties therein provided for, by providing in both of its contracts with the Allmetal Manufacturing Company for the payment of royalties of the same amounts which were payable to complainant under contract Exhibit B, and that the contracts with the Allmetal Manufacturing Company are subject to complainant's interest in his contract with Husted, and that he is entitled to the royalties provided for in those contracts. It is also urged that the Simplex Brooder Stove Company further recognized complainant's rights to royalties, and that its contracts were subject to complainant's contract with Husted, by paying royalties on all stoves sold to April 30, 1913.

It is said that neither Husted nor the Allmetal Manufacturing Company, nor the Simplex Company had any right to sell stoves without paying royalties to complainant, and that their right to sell stoves was dependent upon the payment of these royalties. Manifestly, it was the duty of the Simplex Company to pay the royalties provided for to the Allmetal Manufacturing Company; and it is further urged that the breach of the Husted contract, by the failure to deposit the Kresky grant, and by the failure to pay royalties, entitled complainant to all the stock of the Allmetal Manufacturing Company in the hands of the Michigan

Trust Company, and that complainant, by the terms of the contract, is the owner of the Allmetal Manufacturing Company and is entitled, as such owner, to all the royalties which the Simplex Company has agreed to pay in its contracts with the Allmetal Manufacturing Company.

It is further urged that the trustee under the mortgage should be compelled to pay these royalties out of moneys in his hands belonging to the Simplex Brooder Stove Company as a part of the operating expenses before any other indebtedness is paid; and that such royalties are a preferred claim, as no one has a right to sell these stoves without paying the royalties due to the Allmetal Manufacturing Company, and to complainants as a condition to the right to sell them. It is said that the Simplex Company, having agreed to pay these royalties to the Allmetal Manufacturing Company, should be held to the performance of its agreement.

On the other hand, it is urged on behalf of the defendants the Simplex Brooder Stove Company and W. C. Hopson, trustee under the mortgage, that the granting of relief by specific performance is within the discretion of the court, and that in this case performance should be denied because it would be inequitable; that the contract between complainant and Husted was a personal contract, and provided that if Husted should default in any of its terms, the complainant might take advantage of the following provisions: (1) He might sue Husted at law for damages for the breach, including the specific penalty of $5 for each stove sold. (2) That he might demand and receive from the Michigan Trust Company, as trustee, the stock of the Allmetal Manufacturing Company and have it issued in his own name; and also demand and receive the original Kresky agreement; and it is urged that complainant has not taken advantage of either of these provisions of the

agreement. It is said that he has not made demand upon the Michigan Trust Company, as trustee, for the stock of the Allmetal Manufacturing Company, nor for the Kresky contract. It is also urged that complainant has an adequate remedy at law.

If the provision to pay $5 for each stove sold in violation of the contract was a penalty, as we are inclined to think it was, that would not interfere with specific performance. See *Daily* v. *Litchfield*, 10 Mich. 29; *Jaquith* v. *Hudson*, 5 Mich. 123; *Davis* v. *Freeman*, 10 Mich. 188; *Richardson* v. *Woehler*, 26 Mich. 90; *Johnston* v. *Whittemore*, 27 Mich. 463; *Myer* v. *Hart*, 40 Mich. 517 (29 Am. Rep. 553) ; *Watrous* v. *Allen*, 57 Mich. 362 (24 N. W. 104, 58 Am. Rep. 363) ; *Powell* v. *Dwyer*, 149 Mich. 141, 144 (112 N. W. 499, 11 L. R. A. [N. S.] 978) ; *Buckhout* v. *Witwer*, 157 Mich. 406, 409, 411 (122 N. W. 184, 23 L. R. A. [N. S.] 506. Such a penalty, as repeatedly held by us, is no objection to specific performance.

It is further and mainly urged by said defendants' counsel that complainant is entitled to no relief whatever against the Simplex Company, an independent corporation with no contract or other relations with complainant, unless complainant has shown that the Simplex Company adopted Husted's contract with complainant, either expressly or impliedly; and that complainant has shown neither of these things; and it is urged that it expressly appears by the testimony of the incorporators and the directors, other than N. P. S. Husted, that they were in entire ignorance of this contract and its terms. We do not think that the knowledge of these persons as individuals is controlling. The question here is: What was the knowledge of the Simplex Company? Counsel for said defendants also deny that there can be any implied adoption of the Husted contract; they claim that the authorities cited by complainant's counsel are not appli-

cable; that Husted was acting adversely to the corporation; and that his interest was plainly adverse to that of the Simplex Company. They cite in support of their position Clark & Marshall on Private Corporations, § 723a, pp. 2210, 2211; also section 723, p. 2207, upon the subject of knowledge of an officer dealing with corporations, or otherwise interested adversely. They claim the application of this rule as stated by this court in *State Savings Bank* v. *Montgomery*, 126 Mich. 327 (85 N. W. 879), *People's Savings Bank* v. *Hine*, 131 Mich. 181 (91 N. W. 130), and *Supreme Tent* v. *Bank*, 137 Mich. 627 (100 N. W. 898, 109 Am. St. Rep. 690). We cannot agree with defendants' counsel in the applicability of the authorities last above cited. Counsel recognize the general rule as stated by complainant's counsel, but they claim that the instant case falls within the exception to the general rule. We do not think so. Husted had the legal right to disclose the terms of his contract, and would have violated no duty to anybody had he done so. We cannot say that he had any reason to keep the terms of his contract secret for fear that it would expose and defeat any fraudulent purpose. The Simplex Company was to pay royalties to the Allmetal Manufacturing Company. It is a significant fact that in the contracts between the Simplex Company and the Allmetal Manufacturing Company the Simplex Company agreed to pay the same royalties which Husted had agreed to pay to complainant. If there was any fraudulent scheme, it was a scheme to defraud complainant, and not the Simplex Company; and it seems to us that the last-named company was involved in that scheme as much as Husted was, and that his knowledge must be imputed to that company. It had notice and knowledge through that which was possessed by its vice president and general manager, that the contract, Exhibit B, required that in case the Allmetal Manufacturing Company should

avail itself of the option contained in the Kresky contract, the instrument conveying such right should be held by the Michigan Trust Company in trust the same as the shares of stock of the Allmetal Manufacturing Company were to be held; that is to say, as security for the performance of Exhibit B. The Simplex Company could not therefore, in our opinion, take an assignment of said patent or license except subject to the right of complainant to have such assignment held as security for the performance of the contract, Exhibit B. The failure to deposit with the Michigan Trust Company, as trustee, the grant or assignment from Kresky to the Allmetal Manufacturing Company was a breach of the Husted contract, and was a fraud on complainant, which entitles him to relief under the bill of complaint; and we think that for such breach and fraud complainant, under the circumstances, is entitled to the same remedy against the Simplex Company which he would be entitled to against Husted himself.

It is unnecessary to repeat what we have already stated upon the subject of the similar provisions as to royalties, the payments made, the recognition of complainant's rights, and other similar matters. It must be conceded that the Simplex Company had no right to sell stoves without paying royalties to the Allmetal Manufacturing Company; their right to sell stoves was dependent upon the payment of these royalties. We are of the opinion that the complainant is entitled to have the assignment from the Allmetal Manufacturing Company to the said Simplex Brooder Stove Company of the Kresky grant canceled, because it is void as to complainant, and in violation of the contract between complainant and N. P. Sylvester Husted, of which the Simplex Company had notice, that said assignment should be delivered to the Michigan Trust Company to be held as collateral security as pro-

vided for in Exhibit B, and that said assignment should be decreed to be free and clear of said trust mortgage; that said defendants, and each of them, should be restrained by the order and injunction of this court from selling, assigning, transferring, and incumbering, or in any manner disposing of any right under said assignment from Kresky to said Allmetal Manufacturing Company; that said defendants should come to a true and just accounting with complainant, as holder of the stock of the Allmetal Manufacturing Company, touching the royalties due and unpaid under its contracts with the Allmetal Manufacturing Company, and by the terms of said contract between complainant and N. P. Sylvester Husted, and to become due and payable, to the time of rendering final decree in this cause; and that said William C. Hopson, as trustee under the mortgage, be ordered and directed at all times to retain sufficient money in his hands, as such trustee, to pay all such royalties as accrued prior to the giving of said trust mortgage; and that he and said Simplex Brooder Stove Company be ordered and directed by this court to at once pay to complainant, as holder of the capital stock of the Allmetal Manufacturing Company, royalties on all stoves which have been sold since he has had the management and control of said Simplex Brooder Stove Company's business down to the date of the decree of this court.

The decree of the court below is reversed, and a decree will be entered in this court in accordance with this opinion, with costs to the complainant to be taxed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.